[No. 21595-4-III. Division Three. November 20, 2003.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*, v. CHRISTOPHER O. GONGYIN, *Appellant*.

*Alan L. McNeil* and *Mark E. Wilson*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Anastasia R. Sandstrom, Assistant*, for respondent.

SWEENEY, J. — Immediate family members of a homicide victim are entitled to counseling, but only for "immediate, near-term consequences." RCW 7.68.070(17). Ashley Haigh is the sister of a homicide victim. Four years after her brother was murdered, she sought counseling. The Department of Labor and Industries (Department) rejected the claim as unrelated to immediate or near-term consequences. The Board of Industrial Insurance Appeals (Board) overturned the order. The superior court reversed the Board. The court concluded that Ms. Haigh's problems were neither immediate nor near-term consequences of her

brother's murder. We agree and affirm the superior court's ruling to that effect.

## FACTS

The facts are undisputed.

Ashley Haigh is a sister of homicide victim, Christopher O. Gongyin. Mr. Gongyin was murdered on June 27, 1996. Ms. Haigh was then 10 years old. She was not present and did not witness the homicide. In 1996, both Ms. Haigh and her mother, Melba Haigh, filed an application for grief counseling benefits under the crime victim compensation act, chapter 7.68 RCW (the Act), which the Department approved. Ms. Haigh did not seek counseling at that time.

Lawrence Cronin, MSW,[1] the treatment provider, first requested payment from the Department for counseling services he provided in 2000 to Melba Haigh. The Department refused to reopen the claim. Mr. Cronin then stated that Ms. Haigh began sitting in on the sessions on May 16, 2000, and that Ms. Haigh's treatment was compensable under the Act. He asserts that Ms. Haigh suffered a severe delayed emotional reaction which was a "related effect" of her brother's murder of which the treatment was a "consequence" and, therefore, compensable. The Department rejected the claim, ruling that treatment is compensable solely for immediate and near-term effects of the homicide, which it defines as manifesting within one year of the crime.

Mr. Cronin appealed. An industrial appeals judge rejected the Department's interpretation and vacated its order. The judge concluded that no statute or administrative regulation imposed a one-year limit.

The Board adopted the decision of the industrial appeals judge and it became the final order. The Department sought judicial review. The superior court reversed. The court ruled that the Department's policy was a reasonable inter-

---

[1] Master's degree in social work.

pretation of the statutory language. The court found that the statute clearly and unambiguously provides grief counseling for survivors at the time of bereavement. Ms. Haigh's need for counseling four years later was neither "immediate" nor "near-term" to the homicide. It was not, therefore, covered by the Act. The court concluded that the Department's policy limiting counseling benefits for family members of victims to one year was a reasonable administrative application of the "immediate, near-term" language. The court affirmed the Department's order rejecting the claim.

## DISCUSSION

■ For the first time on appeal, Mr. Cronin contends that the Department engaged in unlawful rule making when it established a policy defining "immediate" as within one year. New issues may not be raised for the first time on appeal. RCW 34.05.554(1). The superior court refused to address the rule-making issue, because it was not raised before the industrial appeals judge or the Board. We will do the same.

### STATUTORY INTERPRETATION

A party aggrieved by an administrative agency's decision in an adjudicative proceeding (including a services provider) may petition the superior court for judicial review. Review of the superior court's decision may be sought in the court of appeals. RCW 34.05.526. Mr. Cronin contends the Department erroneously adjudicated Ms. Haigh's entitlement to benefits.

■ *Standard of Review.* Our review is governed by the Washington State Administrative Procedure Act (APA), chapter 34.05 RCW. We review the agency decision, not that of the superior court. We apply the APA standards for judicial review directly to the record before the agency. *Franklin County Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982).

■ ■ We must determine whether the agency erroneously interpreted or applied the law. RCW 34.05.570(3)(d). And as the complaining party, Mr. Cronin bears the burden of demonstrating that the Department erroneously interpreted or applied the law. RCW 34.05.570(1)(a), (3)(d); *Grabicki v. Dep't of Ret. Sys.*, 81 Wn. App. 745, 750, 916 P.2d 452 (1996). We review issues of law under the error of law standard. In doing so, we give substantial weight to the administrative agency's view of the law. But we may ultimately substitute our own judgment for that of the agency. *Henson v. Employment Sec. Dep't*, 113 Wn.2d 374, 377, 779 P.2d 715 (1989); *Sellers*, 97 Wn.2d at 325.

Immediate, Near-Term Consequences

Ms. Haigh's brother was murdered when she was 10 years old. She exhibited suicidal behavior when she was 14 years old. For the purposes of argument, the superior court treated as an established fact that her delayed reaction to the crime was caused by "repressed memory" syndrome. The question presented, then, is whether treatment for repressed suicidal behavior in a "secondary" victim is compensable under the Act.

■ *Applicable Canons of Statutory Construction.* We construe a statute to ascertain and give effect to the intent of the legislature. *Martin v. Meier*, 111 Wn.2d 471, 479, 760 P.2d 925 (1988). We must give effect to clear statutory language. We give undefined terms their ordinary meaning, absent a manifest contrary legislative intent. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 813, 828 P.2d 549 (1992). We determine the legislative intent from the plain language in the context of the statute as a whole. *Safeway, Inc. v. Dep't of Revenue*, 96 Wn. App. 156, 160, 978 P.2d 559 (1999); *In re Estate of Lyons*, 83 Wn.2d 105, 108, 515 P.2d 1293 (1973). We avoid unlikely or strained interpretations. *Safeway*, 96 Wn. App. at 160. We therefore strive for a construction that promotes the purpose of the statute if the statutory language is susceptible to multiple constructions. *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996).

■ *The Statute.* The crime victim compensation act, chapter 7.68 RCW, is to be broadly construed to effectuate its purposes. *Sebastian v. Dep't of Labor & Indus.*, 142 Wn.2d 280, 284, 12 P.3d 594 (2000). The language of the statute says that "immediate family members of a homicide victim may receive *appropriate counseling to assist in dealing with the immediate, near-term consequences of the related effects of the homicide.*" RCW 7.68.070(17) (emphasis added).

The industrial appeals judge construed the words "immediate" and "near-term" as applying to the "consequences" of the "related effects" of the homicide but not to the effects themselves. This permitted an interpretation in which related effects of the homicide—suicidal behavior, say— could be delayed for years, and the immediate and near-term consequences of the delayed effect—i.e., counseling treatment—are compensable under the Act. Proposed Decision and Order at 9, Certified Appeal Board R. at 44. The superior court judge did not read the language of the statute that way. And neither do we.

Reading the disputed provision in the context of the statute as a whole, the words "immediate" and "near-term" in the secondary victims' provision convey nothing beyond the legislature's intent to assist bereaved relatives of crime victims through the immediate crisis. This does not, by definition, include the effects of repressed memory syndrome. By contrast, the statute places no constraints on compensation for treatment delayed by repressed memory in *primary* child victims, that is, children upon whom a crime was perpetrated directly. That intent is clearly and unambiguously expressed in the same section of chapter 7.68 RCW as the provision at issue here. The legislature extends the period of eligibility for children against whom crimes are committed:

> Because victims of childhood criminal acts may repress conscious memory of such criminal acts far beyond the age of eighteen, the rights of adult victims of childhood criminal acts shall accrue at the time the victim discovers or reasonably

should have discovered the elements of the crime. In making determinations as to reasonable time limits, the department shall give greatest weight to the needs of the victim.

RCW 7.68.060(3). Allowing victims to claim whenever they first become aware of their victimization demonstrates that the legislature knows how to extend benefits beyond the immediate and near-term when that is its intent.

Mr. Cronin cites this section in support of his position that benefits have no time limit for claimants who were children when a crime was committed against a close family member. But that is not what the statute says. The "repressed memory" provision of RCW 7.68.060(3) is for primary victims who are *unaware* until much later of "the elements of the crime." Even a primary victim is not eligible for a delayed reaction to a *known* past crime. It is not alleged that Ms. Haigh did not know that a crime was committed, only that the emotional consequences occurred four years after the fact.

We do not read the family members' provision, RCW 7.68.070(17), to include the same delayed benefits provided to primary victims in RCW 7.68.060(3). Subsection 17 enlarges the circle of persons covered beyond those upon whom a violent crime is committed and provides care for family members who suffer mental and emotional trauma—i.e., related effects—of a violent crime of which a loved one is a victim. But the Act provides these secondary victims with treatment only for the immediate and near-term effects. Effects delayed by repressed memory are simply not provided for.

The Department reasonably interpreted RCW 7.68.070-(17) as providing benefits to secondary victims for grief counseling received contemporaneously with the bereavement. The industrial appeals judge's extension of the concept of repressed memory syndrome in primary victims to include a four-year-long delay of the manifestation of an emotional response to a known event in a secondary victim is not accommodated by this statutory scheme. Unlimited benefits for all would, of course, be ideal. But this is not

what the legislature has provided. The legislature has instructed the Department to administer the program on a self-supporting basis with limited funds and has provided the concomitant discretionary authority to do so. RCW 7.68.015.

The statute contemplates fixed time limits beyond which the Department cannot accept any application for benefits. At times relevant here, that limit was two years. RCW 7.68.060(1)(a). The discretion to determine whether particular circumstances constitute good cause for extending the filing deadline is statutorily placed in the Department. RCW 7.68.060(1)(a). Specifically, the Department makes determinations as to reasonable time limits. RCW 7.68-.060(1)(b).

We affirm the superior court's reversal of the Board's decision and reinstatement of the Department's order.

KURTZ, J., concurs.

KATO, A.C.J. (dissenting) — For purposes of determining whether an immediate family member of a homicide victim may receive counseling, what is the meaning of "immediate, near-term consequences of the related effects of the homicide"? RCW 7.68.070(17). Disagreeing with an industrial appeals judge, the Department of Labor and Industries (Department) and the superior court concluded that compensable treatment was limited to those consequences arising within one year of the homicide, as provided for in a Department policy.

The Department acknowledged at oral argument that its one-year policy had no force or effect of law. The issue thus is statutory construction of RCW 7.68.070(17).

The majority agrees with the superior court that Ms. Haigh's problems were not "immediate" or "near-term consequences of her brother's murder." Majority at 190-91. In effect, this interpretation of RCW 7.68.070(17) allowing counseling only for "immediate, near-term consequences of the . . . homicide" reads out of the statute the words "re-

lated effects." But statutory language must be given effect. *People's Org. for Wash. Energy Res. v. Utils. & Transp. Comm'n*, 104 Wn.2d 798, 825, 711 P.2d 319 (1985). And coverage provisions of remedial statutes are interpreted broadly. *Sebastian v. Dep't of Labor & Indus.*, 142 Wn.2d 280, 284, 12 P.3d 594 (2000).

There is no dispute that Ms. Haigh exhibited suicidal behavior four years after her brother was murdered and that her delayed reaction to the crime was caused by repressed memory syndrome. These were "immediate, near-term consequences of the related effects" of the murder. If the legislature had intended that counseling be provided only for those consequences immediate and near-term to the homicide, it would have said so and would not have included the words "related effects" in the statute. I respectfully dissent.

Review granted at 151 Wn.2d 1032 (2004).