109 P.3d 816 (2005)
154 Wash.2d 38
DEPARTMENT OF LABOR AND INDUSTRIES of the State of Washington, Respondent,
v.
Christopher O. GONGYIN, Petitioner.
No. 74908-6.
Supreme Court of Washington, En Banc.
Argued October 21, 2004.
Decided April 7, 2005.
*817 Alan Lynn McNeil, Spokane, for Petitioner.
Anastasia R. Sandstrom, Seattle, for Respondent.
MADSEN, J.
¶ 1 This case involves interpretation of the crime victim compensation act (CVCA), chapter 7.68 RCW. Lawrence Cronin asks this court to reinstate the Board of Industrial Insurance Appeals' (Board) decision granting compensation pursuant to RCW 7.68.070(17), which provides counseling benefits for immediate family members of a homicide victim to assist in dealing with the "immediate, near-term consequences of the related effects of the homicide." The trial court reversed the Board, holding that Cronin's fee is not compensable under the CVCA. The Court of Appeals affirmed. We reverse the Court of Appeals.

FACTS
¶ 2 On June 27, 1996, Christopher Gongyin, was murdered. Christopher's sister, Ashley Haigh, was 10 years old at the time of the murder. In 1996, shortly after Christopher's death, Ashley's mother, Melba Haigh, submitted an application form for survivor counseling *818 benefits to the Department of Labor and Industries (Department) for herself and Ashley. Neither sought counseling at that time. In 2000, at age 14, Ashley signed and filed a request for survivor counseling with the Department. Between May and June 2000, Ashley received counseling from Cronin, a mental health counselor.[1] Cronin submitted bills for the treatment sessions to the Department. The Department initially paid for the treatment, but later issued a letter decision denying further payment. Cronin wrote to the Department asking for reconsideration. He argued that because of her tender years at the time of the homicide, Ashley suffered from repressed memory syndrome. The Department denied reconsideration, stating that the legislature intended to limit coverage to the near-term effects of the homicide, regardless of age. The Department also informed Cronin that it had no statutory authority to make exceptions, and that it interpreted the language "immediate, near-term" from RCW 7.68.070(17)[2] to mean within a year's time. Because Ashley did not start counseling until almost four years after the homicide, the Department determined that her request did not meet the criteria of "immediate, near-term" as the Department interprets those terms under Departmental Policy 3.02.
¶ 3 Cronin appealed. Cronin testified before the industrial appeals judge (IAJ) that Ashley had not fully dealt with her brother's death because she had not mentally developed to a degree that she was able to verbalize her grief. According to Cronin, Ashley's suicidal behavior at the age of 14 was a manifestation of her delayed feelings of grief and guilt. Additionally, Cronin testified that the staff at Sacred Heart Medical Center, where Ashley was admitted following a suicide attempt, referred her to Cronin because they were concerned that Ashley had not fully dealt with her brother's death. He testified that Ashley's survivor guilt was a "related effect" of her brother's homicide because she was supposed to have been at his house the night of the murder, but changed her plans. Cronin opined that survivor guilt is common in traumatic types of death. Ashley also suffered from recurring, frightening dreams that she was at school and her friends began shooting at her. Ashley thought that these dreams were related to the death of her brother by gunshot four years earlier. She believed that if she had been there she might have prevented her brother's death, or that the killer would have killed her instead. Thus, Cronin testified, Ashley's suicidal behavior, need for hospitalization, and mental health counseling were "immediate, near-term consequences" of that survivor guilt.
¶ 4 The IAJ reversed the Department and ordered payment to Mr. Cronin. The IAJ also determined that the Department's one-year policy was not a rule, but that its policy contravened the legislative intent underlying the statutes. The Board of Industrial Insurance Appeals (Board) adopted the IAJ's proposed decision and order.
¶ 5 The Department filed a petition for review with the Board seeking reversal of the proposed decision and order, but the Board denied the Department's petition. The Department appealed. The Superior Court found the Department's policy limiting counseling benefits under RCW 7.68.070(17) to counseling that is started within one year of the homicide to be reasonable and reversed the Board. Cronin appealed and the Court of Appeals affirmed in a split decision. Dep't of Labor & Indus. v. Gongyin, 119 Wash.App. 188, 79 P.3d 488 (2003). The majority held that the Department had reasonably interpreted the language of RCW 7.68.070(17). Gongyin, 119 Wash.App. at 194-95, 79 P.3d 488. Cronin subsequently sought review in this court.

*819 ANALYSIS
¶ 6 In addition to benefits provided under the CVCA to crime victims, "immediate family members of a homicide victim may receive appropriate counseling to assist in dealing with the immediate, near-term consequences of the related effects of the homicide." RCW 7.68.070(17). To implement RCW 7.68.070(17), the Department adopted "Policy 3.02," which states:
The Department interprets `immediate, near-term consequences' to mean related effects of the homicide on immediate family members for which treatment is started within one year of the homicide.
CVCA ADMINISTRATIVE POLICY MANUAL, Policy 3.02 (July 24, 2000). Although Ashley is an immediate family member of a homicide victim who sought counseling for the related effects of her brother's homicide, the Department denied payment for her mental health counseling on the basis that she did not begin mental health treatment within one year of the crime.
¶ 7 Initially, Cronin claims that Policy 3.2 is really a rule and that it was promulgated in violation of the Washington's Administrative Procedure Act (APA) rule-making requirements. Additionally, he claims that the Department exceeded its statutory authority by adopting the rule because it alters or revokes a benefit which the legislature has conferred by law. Cronin seeks to have the rule invalidated. The Department replies that whether "Policy 3.2" is a rule or an internal policy is irrelevant in this case because Ashley does not fall within the scope of RCW 7.68.070(17).
¶ 8 We agree with the Department that the central question here is whether Ashley's counseling costs are authorized under the CVCA. No decision has previously interpreted RCW 7.68.070(17) and the CVCA does not define "the immediate, near-term consequences of the related effects of the homicide." Accordingly, we must determine the meaning of those words.
¶ 9 The meaning of a statute is inherently a question of law and our review is de novo. King County v. Cent. Puget Sound Growth Mgmt. Hrg's Bd., 142 Wash.2d 543, 555, 14 P.3d 133 (2000); Dioxin/Organochlorine Ctr. v. Pollution Control Hr'gs Bd., 131 Wash.2d 345, 352, 932 P.2d 158 (1997). The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent and purpose. Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 518, 91 P.3d 864 (2004); Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). This is done by considering the statute as a whole, giving effect to all that the legislature has said, and by using related statutes to help identify the legislative intent embodied in the provision in question. Campbell & Gwinn, 146 Wash.2d at 11, 43 P.3d 4. If, after this inquiry, the statute can reasonably be interpreted in more than one way, then it is ambiguous and resort to principles of statutory construction to assist in interpreting it is appropriate. State ex rel. Citizens Against Tolls(CAT) v. Murphy, 151 Wash.2d 226, 243, 88 P.3d 375 (2004); Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4.
¶ 10 Here, because the statute does not define the terms "immediate," "near-term," "consequences," and "related effects," we turn to a standard dictionary to ascertain their plain and ordinary meaning. Am. Cont'l Ins. Co., 151 Wash.2d at 518, 91 P.3d 864; Budget Rent A Car Corp. v. Dep't of Licensing, 144 Wash.2d 889, 899, 31 P.3d 1174 (2001). The word "immediate" means "acting or being without the intervention of another object, cause, or agency." WEBSTER'S THIRD NEW INT'L DICTIONARY 1129 (1993). To be "near" means "at, within, or to a short distance;" "not far distant from, esp. in place, time, or degree." Id. at 1510. A "term" is a "limited or definite extent of time." Id. at 2358. A "consequence" is "something that is produced by a cause or follows from a form of necessary connection or from a set of conditions." Id. at 482. "Related" means "having relationship: connected by reason of an established or discoverable relation." Id. at 1916. And an "effect" is "something that is produced by an agent or cause: something that follows immediately from an antecedent." Id. at 724.
¶ 11 Cronin claims that a plain reading of RCW 7.68.070(17) suggests that there are no "related effects" of a homicide until such *820 time as the effects (e.g., emotional problems) are manifest. Cronin asserts that Ashley's counseling is covered under the plain meaning of RCW 7.68.070(17) because the adjectives "near-term" and "immediate" modify "consequences," not "related effects." From this he argues Ashley's need for counseling was an immediate and near-term consequence of the related effects of the homicide even though her need for counseling did not manifest itself until nearly four years after the homicide. Thus, he argues, the Board correctly found that Ashley's need for mental health counseling was immediate and near-term to the "related effects" of the homicide even though the counseling was not immediate and near-term to the homicide itself.
¶ 12 The Department argues that the plain language of RCW 7.68.070(17) requires predominantly a temporal, but also a causal, connection between the need for counseling and the homicide itself in order to qualify for benefits. Thus, the Department contends, the "consequences" must be immediate and near in time to the homicide and must be causally related to the homicide.
¶ 13 Although the parties ascribe different interpretations to the words "immediate," "near-term," "consequences," and "related effects" as used in subsection (17), simply because different interpretations are conceivable the statute is not necessarily ambiguous. Am. Cont'l Ins. Co., 151 Wash.2d at 518, 91 P.3d 864. If the statutory language is susceptible of two constructions, one of which will carry out the purpose and intent of the legislature and other that will defeat it, the former construction should be adopted. City of Seattle v. Fontanilla, 128 Wash.2d 492, 498, 909 P.2d 1294 (1996).
¶ 14 Beginning with the ordinary meaning of "immediate," "near-term," "consequences," and "related effects," it is clear there are both causal and temporal elements at play in the statute. However, it is not clear from RCW 7.68.070(17) alone whether the intent and purpose of the legislature is to limit the scope of recovery for immediate family members of homicide victims to effects that arise within one year of the homicide as the Department argues, or whether counseling can be obtained if there is a direct, immediate causal link to the effects of the homicide even though the need for counseling may arise, as in this case, four years later. The meaning of the terms becomes clear, however, when other provisions in chapter 7.68 RCW are considered. See Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4.
¶ 15 RCW 7.68.060(1) provides that no compensation of any kind shall be available under the act if:
(a) An application for benefits is not received by the department within two years after the date the criminal act was reported to a local police department or sheriff's office or the date the rights of dependents or beneficiaries accrued, unless the director has determined that "good cause" exists to expand the time permitted to receive the application. "Good cause" shall be determined by the department on a case-by-case basis and may extend the period of time in which an application can be received for up to five years after the date the criminal act was reported to a local police department or sheriff's office or the date the rights of dependents or beneficiaries accrued; or
(b) The criminal act is not reported by the victim or someone on his or her behalf to a local police department or sheriff's office within twelve months of its occurrence or, if it could not reasonably have been reported within that period, within twelve months of the time when a report could reasonably have been made. In making determinations as to reasonable time limits, the department shall give greatest weight to the needs of the victims.

(Emphasis added.)
¶ 16 There is an immediately apparent discrepancy between the meaning the Department ascribes to the terms "immediate, near-term consequences of the related effects of the homicide" in "Policy 3.2" and the language of RCW 7.68.060(1). The "policy" interprets those words to mean related effects of the homicide on immediate family members for which treatment is started within one year of the homicide. However, RCW 7.68.060(1)(a) permits the victim to apply for benefits within two years after the date the *821 crime is reported or the date the rights of dependents or beneficiaries accrue. Moreover, RCW 7.68.060(1)(a) provides that for "good cause," the Department may extend the time for application to five years after the date the crime is reported or the date the rights of dependents or beneficiaries accrued. Under the Department's interpretation of subsection (17), a crime victim who is the immediate family member of a homicide victim must begin counseling within one year of a homicide, but has two years after the homicide is reported, or the date the right to benefits accrue, to apply for those benefits. Or, if "good cause" exists, the victim must begin counseling within one year but may apply for benefits five years later. In effect, the Department's interpretation of subsection (17) shortens the time period for a crime victim who is the immediate family member of a homicide victim to receive counseling to one year even though she may apply for these benefits, in some cases, five or more years later.
¶ 17 Rather than setting time limits for receiving benefits as the Department argues, the provisions of RCW 7.68.070, including subsection (17), set forth the classes of persons qualified for benefits, the nature of the injuries to be covered, and monetary limits. For example, subsection (12) provides that "victims of sexual assault are entitled to receive appropriate counseling," and those "counseling services may include, if determined appropriate by the department, counseling to members of the victim's immediate family." In subsection (18) dependent parents or stepparents of a child homicide victim coming from another state to assist in prosecution may receive a lump sum payment not to exceed $7,500. Significantly, none of the provisions in RCW 7.68.070 set time limits on receiving CVCA benefits.
¶ 18 Chapter 7.68 RCW as a whole shows that Cronin's interpretation of subsection (17) as limiting the nature of the counseling benefits available to immediate family members of homicide victims to those immediate, near-term consequences of the related effects of the homicide, even though the related effects may not manifest immediately after the homicide, is correct.
¶ 19 In setting the time limits in the CVCA, the legislature has recognized that a crime victim may suffer the effects of crime well after the crime is committed. When the legislature established a two-year application period for benefits, it provided that the two years might start from the date the crime is reported or "the date the rights of dependents or beneficiaries accrued." RCW 7.68.060(1)(a). By including accrual as a trigger for the application period, the legislature recognized that the harm caused by the criminal act may not arise immediately. Additionally, the legislature provided a five-year "good cause" exception that is also triggered by either the date the crime is reported or the date the right to benefits accrues. And, although not applicable here, RCW 7.68.060(3) explicitly recognizes that victims of childhood criminal acts might not be able to cope with the effects of the crime until they are well past the age of 18 at which time they may seek the benefits of the CVCA. See RCW 7.68.060(3).[3] Finally, it is significant that where the legislature authorized the Department to set time limits it has instructed the Department to give the "greatest weight to the needs of the victim." RCW 7.68.060(1)(b), (3).
¶ 20 The Department, though, argues that its interpretation best carries out the CVCA's dual goals of compensation and cost containment.[4] While we have recognized these dual goals, the CVCA is undoubtedly a remedial statute and must be interpreted broadly. Sebastian v. Dep't of Labor & Indus., 142 Wash.2d 280, 12 P.3d 594 (2000). *822 "Prior to the enactment of the crime victims compensation act, the innocent victim of a criminal act had little chance of recovery for the physical injuries or disabilities and financial hardships which he or she, or his or her dependents, may innocently suffer as a consequence of the criminal act." Haddenham v. State, 87 Wash.2d 145, 148, 550 P.2d 9 (1976). The CVCA is an attempt to remedy that situation. Id. at 148, 550 P.2d 9. Thus, the purpose of the CVCA is to assure at least a minimum level of compensation for crime victims through a combination of insurance and CVCA resources. Sebastian, 142 Wash.2d at 284, 12 P.3d 594.
¶ 21 Contrary to the Department's contention, the CVCA shows that the legislature has elected to meet its goal of cost containment by placing limits on the nature of the injuries to be covered, limiting certain expenses, such as funeral expenses, and setting percentage of wage caps for certain classes of victims. See generally, RCW 7.68.070.[5]
¶ 22 Turning to Policy 3.02, an administrative regulation may not limit eligibility for public assistance in derogation of the governing statutes. Rice v. Dep't of Soc. & Health Servs., 26 Wash.App. 32, 36, 610 P.2d 970 (1980). Rules must be written within the framework and policy of the applicable statutes. Wash. Fed'n of State Employees v. Higher Educ. Pers. Bd., 87 Wash.2d 823, 827, 557 P.2d 336 (1976). We find that regardless of whether Policy 3.02 is a "policy" or "rule" interpreting "immediate, near-term consequences of the related effects of the homicide," it fails to carry out the intent of the legislature. RCW 7.68.070(17) provides counseling for the immediate, near-term consequences of the related effects of the homicide when application is made within the time provided in RCW 7.68.060(1)(a) and (b).

ATTORNEY FEES
¶ 23 Cronin claims attorney fees and costs should be awarded in accordance with RAP 18.1 and RCW 51.52.130 for defending this appeal. The Department claims RCW 51.52.130 does not provide for attorney fees in appellate cases under the CVCA because the provisions of RCW 7.68.110 govern.
¶ 24 Under RCW 7.68.110, the provisions of chapter 51.52 RCW, the Industrial Insurance Act, govern appeals unless it is an appeal taken from a decision of the board of industrial insurance appeals under the CVCA. RCW 7.68.110. In those cases, judicial review takes place under RCW 34.05.510 through 34.05.598, the parts of the APA dealing with adjudicative proceedings and judicial review, respectively. RCW 7.68.110. However, RCW 34.05.510 through 34.05.598 do not address attorney fees. Thus, it appears the default provisions of RCW 51.52.130 apply. See RCW 7.68.110.
¶ 25 RCW 51.52.130, the IIA's attorney fee provision, states in relevant part:
If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained, a reasonable fee for the services *823 of the worker's or beneficiary's attorney shall be fixed by the court.
¶ 26 Here, the Department appealed the Boards decision allowing payment for Ashley's counseling. Through Cronin's efforts, Ashley's right to relief has been sustained. Accordingly, we reinstate the Board's order and award Cronin attorney fees.
ALEXANDER, C.J., C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ., and IRELAND, J. Pro Tem.
NOTES
[1] Although this case is captioned in the name of the decedent, Christopher O. Gongyin, the case originated from an appeal filed by Lawrence Cronin, MSW, Ashley's lay representative. Health services providers who are aggrieved by Department orders may appeal to the Board of Industrial Insurance Appeals. See RCW 51.52.060; RCW 7.68.110.
[2] RCW 7.68.070(17) states in relevant part: "In addition to other benefits provided under this chapter, immediate family members of a homicide victim may receive appropriate counseling to assist in dealing with the immediate, near-term consequences of the related effects of the homicide."
[3] "Because victims of childhood criminal acts may repress conscious memory of such criminal acts far beyond the age of eighteen, the rights of adult victims of childhood criminal acts shall accrue at the time the victim discovers or reasonably should have discovered the elements of the crime. In making determinations as to reasonable time limits, the department shall give greatest weight to the needs of the victim." LAWS OF 1990, ch. 3, § 501(3); RCW 7.68.060(3).
[4] "The department of labor and industries shall operate the crime victims' compensation program within the appropriations and the conditions and limitations on the appropriations provided for this program." RCW 7.68.015
[5] We note the legislature has continued to add classes of persons eligible to receive benefits as well as to expand time limits for receiving benefits. For example, in 1990 the legislature added RCW 7.68.060(3), providing benefits for victims of childhood criminal acts who suffered from repressed memory of the crime, including a discovery rule and instructions that "[i]n making determinations as to reasonable time limits, the department shall give greatest weight to the needs of the victim." LAWS OF 1990, ch. 3, § 501; RCW 7.68.060(3). In 1992, the legislature expanded the scope of coverage under the CVCA to include immediate family members of homicide victims by adding section (17) to RCW 7.68.070, the provision at issue here. LAWS OF 1992, ch. 203, § 1(17). And, in 1996, the legislature increased the time period in which applicants can apply for benefits under the CVCA to two years. LAWS OF 1996, ch. 122, § 4(1)(a). It also added language allowing an exception to the time limit if "good cause" is found by the Department. Id. Most recently, in 2002, the legislature expanded the scope of coverage under the CVCA when it added RCW 7.68.070(18), providing monetary relief to dependent mothers, fathers, stepmothers or stepfathers who are a survivor of his or her child's homicide and who do not reside in this state if they assist the authorities in the judicial proceedings related to the death of the victim. LAWS OF 2002, ch. 54, § 1; RCW 7.68.070(18).