IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF LABOR & INDUSTRIES,<br><br>　　　　　　　　　Respondent,<br><br>　　　　v.<br><br>HOUSING AUTHORITY OF KING COUNTY,<br><br>　　　　　　　　　Appellant. | No. 80408-1-I<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |

Respondent, Department of Labor and Industries, has filed a motion for reconsideration of the opinion filed in the above matter on June 8, 2020. The court has determined that respondent's motion for reconsideration should be granted, the opinion should be withdrawn and a substitute opinion be filed. Now, therefore, it is hereby

ORDERED that respondent's motion for reconsideration is granted. It is further

ORDERED that the opinion filed on June 8, 2020, is withdrawn and a substitute opinion be filed.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF LABOR & INDUSTRIES, | No. 80408-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| HOUSING AUTHORITY OF KING COUNTY, | |
| Appellant. | |

SMITH, J. — The King County Superior Court reversed the Board of Industrial Insurance Appeal's (Board) order vacating the Department of Labor and Industries' (Department) issuance of a citation against Housing Authority of King County. Housing Authority appeals, asserting that the Board correctly determined that Housing Authority complied with the Department's regulation that requires Housing Authority to have performed a good faith inspection for asbestos containing material. The regulation also requires Housing Authority to maintain the inspection reports.

Because Housing Authority's contractor misplaced one volume of its asbestos maintenance program and because the remaining volume did not contain the laboratory results, sample locations, or the inspector's credentials,

Citations and pin cites are based on the Westlaw online version of the cited material.

Housing Authority failed to maintain the report as required by the cited regulation. Therefore, we affirm the superior court's decision and reverse the Board's order.

FACTS

Housing Authority, a municipal corporation, provides public housing in King County. To this end, Housing Authority owns Fairwood Apartments in Renton, Washington. And Housing Authority contracts with Allied Residential to run the day-to-day operations for Fairwood Apartments.

A Department regulation—promulgated pursuant to Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW—requires building owners to perform or have performed an asbestos survey, maintain the survey's report, and provide the report to the Department upon request. Pursuant to this regulation, in 1995, Clayton Environmental Consultants completed an Asbestos Operations and Maintenance Program for Fairwood Apartments. The program contained three volumes.

Volume 1's stated objective was to provide for the "management of asbestos-containing material (ACM) in the Fairwood Apartments." Volume 1, section 4 provided, among other things, a short summary of a survey of Fairwood Apartments completed by Phase I Inc., an asbestos testing and removal company. Section 4 listed the known ACM present at the apartments, i.e., (1) ceiling texture material, (2) gypsum board and joint compound, (3) floor tile and mastic, and (4) roofing material. Phase I Inc.'s owner, Eric Kieselbach, later testified that he did not recall his company's work at Fairwood Apartments and had no documentation. But he explained that Phase I Inc. completes two types

2

of inspections: (1) "a Phase I site inspection," which includes limited asbestos sampling that does not comply with Asbestos Hazard Emergency Response Act (AHERA) standards, and (2) an asbestos survey, which includes photographs, laboratory result analyses, chain of custody information, locations of samples, and floor plans showing where the inspector took asbestos samples. An AHERA accredited inspector performs the asbestos surveys.

Appendix B in volume 1 provided a template for notifying the building's employees of ACM. The template stated that "Housing Authority . . . completed a preliminary visual survey to determine the presence of [ACM,] . . . [and t]he building was inspected in accordance with the Environmental Protection Agency guidelines for [ACM]."

According to Housing Authority, volume 2 included "copies of the applicable regulations." And while there is no evidence of what was contained in volume 3, Housing Authority contends that volume 3 contained "backup studies." Housing Authority provided volume 3 to Allied Residential, but Allied Residential misplaced it.

In 2001, Housing Authority obtained an asbestos survey for roofing material in conjunction with roofing construction. In 2014, it obtained another asbestos survey for flooring material throughout the apartment complex. In 2016, Allied Residential hired OV Construction, All Service Plumbing, and American Floors and Blinds (contractors) to perform work at Fairwood Apartments.

Based on the construction work completed at the apartments, the

Department received a complaint. Compliance Safety and Health Officers (CSHO) Tom Vroman and Timothy Garlock inspected Housing Authority, Allied Residential, and the contractors regarding the work being performed. CSHO Garlock collected samples from the building indicating "there was asbestos." And CSHO Vroman requested documentation of any information pertaining to asbestos at Fairwood Apartments that Housing Authority gave Allied Residential. Housing Authority provided volume 1 of the program and the 2001 inspection report from the roofing construction. Housing Authority did not provide volume 2 or volume 3 to the Department.

CSHO Vroman later determined that Housing Authority violated Department regulations promulgated under WISHA. Specifically, CSHO Vroman found that the program "lack[ed] specific knowledge of the presence, quantity, and location of asbestos on-site (all items that are determined in an AHERA accredited Good Faith Inspection)." For this reason and because the report did not list an accredited inspector or provide laboratory results, CSHO Vroman concluded that Housing Authority's program did not meet the requirements of a good faith inspection report.

On February 3, 2017, the Department issued one serious violation (Violation 1) and one general violation (Violation 2) against Housing Authority. Violation 1 alleged that Housing Authority "did not ensure that employees and subcontractors assigned to do work on an asbestos project at Fairwood Apartments were certified asbestos workers." And Violation 2 alleged that Housing Authority "did not perform or cause to be performed, a good faith

4

building inspection, by an accredited inspector, to determine which building materials contained asbestos."

After the Department issued the violations, Housing Authority had another survey performed. Housing Authority provided the resulting report to the Department. And Mark Abernathy, Housing Authority's risk manager, later testified that the report indicated nothing materially different from the 1995 program.

Housing Authority appealed the violation to an Industrial Appeals Judge (IAJ). And thereafter, Housing Authority moved for partial summary judgment, seeking dismissal of Violation 1. In response, the Department moved to vacate Violation 1. And the IAJ issued an order granting the Department's motion to vacate, thereby denying Housing Authority's motion for partial summary judgment.

On April 9, 2018, the IAJ held a hearing on Violation 2. Thereafter, the IAJ issued a proposed decision and order vacating the general violation. Specifically, the IAJ determined that the program complied with the Department's regulations because the program identified building materials containing asbestos and provided specific instructions on how to maintain or repair those building materials.

The Department petitioned for review by the Board, but the Board denied the petition for review without comment, resulting in the Board's acceptance of the IAJ's proposed decision. Thus, the Board adopted the following findings of fact and conclusions of law:

4. In 1995, the Housing Authority of King County, through Clayton Environmental Consultants, an accredited inspector, performed a good faith building inspection of the Fairwood Apartments to identify and determine asbestos containing materials at the apartment complex. Clayton Environmental Consultants produced a three-volume report of its inspection. The Housing Authority of King County provided a complete copy of all volumes of the inspection report to Allied Residential, whom the Housing Authority of King County hired to conduct the day to day management and maintenance of the Fairwood Apartments.

5. The Housing Authority of King County complied with the requirements of [Washington Administrative Code] (WAC) 296-62-07721(2)(b)(ii) in that before it authorized or allowed any construction, renovation, remodeling, maintenance, repair, or demolition project, it, as the facility owner, caused to be performed a good faith inspection to determine whether materials to be worked on or removed contained asbestos, and the inspection was documented by a written report maintained on file and made available upon request to the director of the Department.

The Board therefore concluded that "Housing Authority . . . did not commit a general violation of WAC 296-62-07721(2)(b)(ii) as specified in Violation 2, Item 1 of Corrective Notice."

The Department appealed the Board's decision to King County Superior Court. The superior court determined that Housing Authority violated WAC 296-62-07721(2)(b)(ii) because it "failed to keep[—or 'maintain'—]the 1995 good faith inspection report in its existing state and to preserve it from failure or decline." Specifically, the court found that "[t]he plain language of the code . . . requires the entire report to be maintained on file." Thus, the superior court reversed the Board's decision and affirmed Violation 2.

Housing Authority appeals.

6

ANALYSIS

Housing Authority contends that the superior court erred when it reversed the Board's decision and determined that Housing Authority violated WAC 296-62-07721(2)(b)(ii). We disagree.

Under WISHA, "[t]he Department bears the initial burden to prove a violation." Mowat Constr. Co. v. Dep't of Labor & Indus., 148 Wn. App. 920, 924, 201 P.3d 407 (2009); WAC 263-12-115(2)(b). Here, the Department cited Housing Authority for a violation of WAC 296-62-07721(2)(b)(ii), which states:

> Before authorizing or allowing any construction . . . , a[ building's] owner . . . must perform, or cause to be performed, a good faith inspection to determine whether materials to be worked on or removed contain asbestos. The inspection must be documented by a written report maintained on file and made available upon request to the director . . . .
> . . . [and] must be conducted by an accredited inspector.

In short, the regulation requires building owners to complete a good faith inspection using an accredited inspector and to maintain the report produced therefrom.

"We "review[ ] a decision by the Board directly, based on the record before the agency." Mowat Constr. Co., 148 Wn. App. at 925. To this end, "we review the Board's findings of fact for substantial evidence" and "'view the evidence and reasonable inferences in the light most favorable to [Housing Authority,] the prevailing party.'" Pro-Active Home Builders, Inc. v. Dep't of Labor & Indus., 7 Wn. App. 2d 10, 16, 432 P.3d 404 (2018) (quoting Frank Coluccio Constr. Co. v. Dep't of Labor & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014)). "We review the Board's conclusions of law de novo to determine whether the Board correctly

applied the law and whether the Board's findings of fact support its conclusions of law." Pro-Active Home Builders, 7 Wn. App. 2d at 16.

As an initial matter, Housing Authority asserts that the Department failed to assign error to the Board's finding of fact 5 and that it therefore cannot challenge it on appeal. The Department argued at the superior court that it was "not asking the Court to reverse any of the factual findings" because it was raising "only issues of law." To this end, the Department contested the Board's conclusion that Housing Authority maintained the report. While the Board labeled the conclusion a finding of fact, the determination in finding of fact 5 that Housing Authority maintained its report as required by the Department's regulations involved a conclusion of law. And even "if a conclusion of law is labeled as a finding of fact, . . . it will be treated as a conclusion of law." Dep't of Labor & Indus. v. Lyons Enters., Inc., 186 Wn. App. 518, 529-30, 347 P.3d 464 (2015), aff'd, 185 Wn.2d 721, 374 P.3d 1097 (2016). Thus, because the Department discussed this conclusion of law at the superior court, we disagree with Housing Authority and conclude that the Department properly raised the issue below.

Because "[w]e interpret agency regulations as if they were statutes," Top Cat Enters., LLC, v. City of Arlington, 11 Wn. App. 2d 754, 760, 455 P.3d 225 (2020), and because we must discern the meaning of "maintain" within the regulation, whether Housing Authority maintained its report in compliance with WAC 296-62-07721(2)(b)(ii) presents an issue of statutory interpretation that we review de novo. See Dep't of Labor & Indus. v. Gongyin, 154 Wn.2d 38, 44, 109

P.3d 816 (2005). "'If a regulation is unambiguous, intent can be determined from the language alone, and we will not look beyond the plain meaning of the words in the regulation.'" Top Cat Enters., LLC, 11 Wn. App. 2d at 761 (quoting Mader v. Health Care Auth., 149 Wn.2d 458, 473, 70 P.3d 931 (2003)). To that end, if a word is not defined in a regulation, it is "given [its] ordinary definition as defined in the dictionary." Dep't of Labor & Indus. v. Tyson Foods, Inc., 143 Wn. App. 576, 582, 178 P.3d 1070 (2008).

Here, the regulation is unambiguous because the intent of the regulation is clear: a building owner must perform or have performed an asbestos survey by an accredited inspector, maintain the survey report, and provide it to the Department. And "maintain" is not defined in the regulation. But its ordinary meaning is "to keep in a state of repair, efficiency, or validity[, and] preserve from failure or decline." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2627 (2002). Here, Housing Authority concedes that volume 3 is missing. And volume 3 may have contained evidence of an accredited inspector's completion of the survey. But, as discussed below, volume 1 alone did not provide sufficient evidence to make a determination as to whether the survey met the regulation's requirements. Without Housing Authority's maintenance of the complete report and the report's provision to the Department, the Department cannot make an informed determination as to whether the survey complied with and fulfilled the purpose of the regulation. And WISHA regulations are to be interpreted liberally in order to achieve their purpose of providing safe working conditions for every worker in Washington. Frank Coluccio Constr. Co., 181 Wn. App. at 36. Without

volume 3, the Department cannot assess the report's validity. Therefore—according to the plain language of the regulation—lacking volume 3, Housing Authority violated WAC 296-62-07721(2)(b)(ii).

Housing Authority disagrees and asserts that volume 1 satisfied the requirement to maintain the report. Volume 1 contains significant information on the management of and best practices for dealing with ACM. However, the only information relating to a good faith inspection is found in section 4, which simply lists the four building materials known to contain asbestos. Section 4 does not provide information on whether the listed ACMs exist throughout the whole property, and it does not explain the sampling process, provide the laboratory results, show the location of the samples taken, provide the inspector's accreditation, or give any insight into the type of ACM located throughout the apartment complex.

In contrast, Housing Authority contends that the summary list contained in section 4 of volume 1 applies to all units of the apartment complex. But it cites testimony that does not provide evidence to that effect. Specifically, Abernathy stated that section 4 applied to each apartment. But Abernathy also answered, "I assume so," when asked whether volume 3 would have listed "which apartment units had asbestos." And nowhere in the record—particularly in section 4—does it indicate that the summary list pertained to all units. Thus, contrary to Housing Authority's contention, volume 1 does not provide notice of the actual location of ACM and does not assert that ACM is in every apartment. And to read the regulation as requiring only a summary list of building materials containing

asbestos would undermine the regulation's purpose to provide safe working conditions.

In further support of its position, Housing Authority also points to the Board's conclusion that the program "complied with the requirements of the WAC regulation" because, among other things, "[t]he fact that one of the volumes of the report was lost since the report was issued does not negate the fact the inspection was performed and the report prepared which detailed which building products contained asbestos." The Board's conclusion was incorrect. Specifically, the fact that an inspector *prepared* a report does not satisfy the legal requirement that Housing Authority *maintained* the report and provided it to the Department. Thus, Housing Authority's assertion fails.

Finally, Housing Authority asserts that "the record unequivocally establishes that [it] caused a good faith building inspection to be performed." First, as discussed above, due to the lack of a complete report, the Department was unable to determine whether the survey complied with the accreditation requirement under the statute.[1] Furthermore, while Violation 2 references only Housing Authority's failure to perform a good faith inspection, the Department cited WAC 296.62.07721(2)(b)(ii) as the violated and applicable regulation. And the inspection information summary noted the importance of the information

---

[1] To the contrary, the record suggests that Housing Authority's inspection did not comply with the WAC 296-62-07721. Specifically, section 4 explicitly states that a "Phase I environmental assessment [was] conducted by Phase I, Inc." And Kieselbach testified that a Phase I Inc. survey would not comply with AHERA reporting standards by an accredited inspector. Furthermore, the record provides no basis for Kieselbach's testimony that "apparently [Phase I Inc.] did an asbestos survey," which would have involved an accredited inspector.

missing from the report, stating:

> [G]iven the lack of specific knowledge of the presence, quantity and location of asbestos on-site (all items that are determined in an AHERA accredited Good Faith Inspection), it is likely that many projects on site would be considered to disturb ACM or PACM. If the annual budgeting process does not accurately account cost of doing maintenance and repair work on ACM, then both parties are not appropriately setting up procedures to handle ACM properly.

Additionally, the issue of whether Housing Authority maintained the report was litigated at the IAJ hearing and throughout the appeals process. Housing Authority also points to no legal authority—and we have found none—that requires the citation to specifically state all issues material to the violation. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Thus, Housing Authority's assertion is unpersuasive.

WISHA asbestos regulations are vital to the health and safety of workers throughout the state. And because Housing Authority failed to maintain the report's important—if not imperative—information pertaining to the asbestos survey, the Board erred when it concluded that Housing Authority did not violate WAC 296-62-07721(2)(b)(ii).

Therefore, we affirm the superior court's reversal of the Board's order.

_____

WE CONCUR:

_____          _____