[No. 32364-8-II.   Division Two.   August 9, 2005.]

DONALD ROLLER, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES ET AL., *Respondents*.

*William D. Hochberg*, for appellant.

*Robert M. McKenna, Attorney General*, and *Penny L. Allen, Assistant*, for respondents.

¶1 VAN DEREN, J. — Donald Roller suffered an industrial injury and receives workers compensation benefits from the Department of Labor and Industries (Department). After six back surgeries did not relieve his pain or prove to be rehabilitative, he sought pre-approval from the Department for coverage of a treatment recommended by his physician to implant an intrathecal pain pump that would systematically administer small amounts of morphine into his spine.

¶2 The Department denied his request, but he went forward with the procedure and it significantly improved his condition. The Board of Industrial Insurance Appeals (Board) and the superior court affirmed the Department's denial of his claim. He appeals, arguing that the Department misinterpreted WAC 296-20-03002 and WAC 296-20--03014 to exclude his coverage request.

¶3 We reverse, holding that the Department's interpretation of the regulations to deny coverage for the intrathecal pump and its accompanying surgical implantation was erroneous and contrary to the legislative intent and purpose of the WACs and the Industrial Insurance Act, Title 51 RCW.

## FACTS

A. Roller's Injury and Treatment[1]

¶4 Roller suffered an industrial injury to his back as an employee at the Department of Natural Resources. The Department approved his workers' compensation claim and Roller continues to receive benefits.

¶5 Following six back surgeries, Roller was diagnosed with arachonoiditis, a permanent spinal inflammation that causes severe pain and decreased mobility. Roller's physician determined that the arachonoiditis diagnosis was related to the industrial injury and recommended that Roller be treated with an intrathecal pain pump because his six back surgeries failed to improve his function or decrease his chronic pain. Roller's physician believed that surgical implantation of an intrathecal pump was the most appropriate medical treatment for Roller. This pump is a drug delivery device surgically implanted into a patient's body that systematically administers small doses of morphine or related opioid medication directly to the spinal canal.

¶6 Roller requested preauthorization from the Department for the intrathecal pump and its accompanying surgical implantation; however, the Department denied his request in December 2001 without an explanation. Despite the Department's denial, Roller went ahead with the medical procedure and now experiences significant pain reduction and increased functionality.

¶7 Roller's declaration states that after implantation of the pump "my pain symptoms were significantly decreased. I was also able to engage in activities that had previously been impossible or very difficult . . . includ[ing] walking, sleeping, standing, sitting." Admin. R. (AR) at 85. Roller's declaration also states that he can do more at work after the

---

[1] The record before us does not include certain exhibits consistently cited by the parties' administrative and appellate briefs, such as the declarations of Roller's physician. But Roller's medical history is undisputed, so this omission is not dispositive. *See* Industrial Appeals Judge's Decision and Order ("There are no disputed facts in this appeal."). Admin. R. at 27.

surgery and that the pump has "decreased my consumption of medical services and prescriptions." AR at 85. Similarly, Roller's physician determined that Roller used 70 percent less pain medication with the intrathecal pump.

B. Procedural History

¶8 Roller appealed the Department's denial of coverage for the intrathecal pump and its accompanying surgical implantation. The parties filed cross-motions for summary judgment. The industrial appeals judge (IAJ) affirmed the Department's denial of coverage. The IAJ held that Roller's medical procedure was excluded under WAC 296-20--03002(2) and WAC 296-20-03014.

¶9 Roller appealed the IAJ decision to the three-member Board; two members affirmed. Roller then appealed to the superior court, which affirmed the Board's decision in all respects. Roller now seeks our review. Neither party asserts that there any material facts in dispute, including Roller's arachonoiditis diagnosis and his doctor's determination that this condition is related to the industrial injury. *See, e.g.,* Br. of Resp't at 4 ("The facts in this case have never been in dispute at any stage of administrative or judicial review.").

## ANALYSIS

### I. STANDARD OF REVIEW

¶10 The Court of Appeals, Division Three, recently set forth the standard of review for a challenge to an agency's interpretation of its regulations:

> We interpret agency regulations as if they were statutes . . . . [and] the Board's interpretation of the statute or regulation *de novo. We review the agency's interpretation under an error of law standard,* which allows an appellate court to substitute its own interpretation of the statute or regulation for the Board's interpretation. We give substantial weight to the agency's interpretation of statutes and regulations within its

area of expertise. *Accordingly, we will uphold an agency's interpretation of a regulation if "it reflects a plausible construction of the language of the statute and is not contrary to the legislative intent." But we must also ensure that the agency applies and interprets its regulations consistently with the enabling statute.*

*Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn App. 402, 409, 97 P.3d 17 (2004) (emphasis added) (citations omitted) (quoting *Seatoma Convalescent Ctr. v. Dep't of Soc. & Health Servs.*, 82 Wn. App. 495, 518, 919 P.2d 602 (1996)).

¶11 We review a statute's plain language and statutory scheme to determine legislative intent. *State ex rel Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242, 88 P.3d 375 (2004). Our statutory interpretation must not reach an absurd result. *Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 426, 869 P.2d 14 (1994). And unchallenged facts of an agency's final decision are verities on appeal. *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 407, 858 P.2d 494 (1993).

## II. DEPARTMENT'S INTERPRETATION OF WAC 296-20-03014 AND WAC 296-20-03002

¶12 Roller contends that the Department's denial of coverage for the intrathecal pump and its accompanying surgical implantation is contrary to RCW 51.36.010's mandate for payment for " 'proper and necessary medical and surgical services.' " Br. of Appellant at 6 (quoting RCW 51-.36.010). He specifically asserts that the Department's denial of coverage under WAC 296-20-03014 and WAC 296-20-03002 conflicts with the Department's definition of "proper and necessary" medical treatment under WAC 296-20-01002.[2] Roller emphasizes that WAC 296-20-01002 requires that the Department pay for medical treatment

[2] WAC 296-20-01002 provides in relevant part,

**Proper and necessary:**

(1) The department or self-insurer pays for proper and necessary health care services that are related to the diagnosis and treatment of an accepted condition.

that reflects good medical practice and is rehabilitative. And he argues that RCW 51.12.010 requires courts and the Department to liberally construe the Industrial Insurance Act and related regulations in favor of the injured worker, which also requires any ambiguity in the Act or regulations be resolved to benefit the injured worker. *See, e.g., Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 811, 16 P.3d 583 (2001). We agree.

¶13 The Department denied Roller's claim solely under WAC 296-20-03014 and -03002. But neither regulation expressly excludes from coverage the intrathecal pump and its accompanying surgical implantation or declares that this medical treatment is inappropriate. Indeed, the entire regulatory scheme does not specifically prohibit Roller's medical procedure. Further, it is undisputed that (1) after six back surgeries that failed to reduce his pain, Roller's physician recommended the intrathecal pump as a proper and medically necessary treatment; and (2) the intrathecal pump has proven to be rehabilitative by decreasing his pain and improving his functionality. Because we resolve any ambiguity in the regulations to benefit Roller, the Department's denial of coverage of the intrathecal pump and its accompanying surgical implantation under WAC 296-20--03014 and -03002 conflicts with WAC 296-20-01002 and, thus, was erroneous.[3]

¶14 The Department asserts that the legislature has authorized the Department to promulgate rules on the

---

(2) Under the Industrial Insurance Act, "proper and necessary" refers to those health care services which are:

(a) Reflective of accepted standards of good practice, within the scope of practice of the provider's license or certification;

(b) Curative or rehabilitative. Care must be of a type to cure the effects of a work-related injury or illness, or it must be rehabilitative. Curative treatment produces permanent changes, which eliminate or lessen the clinical effects of an accepted condition. Rehabilitative treatment allows an injured or ill worker to regain functional activity in the presence of an interfering accepted condition. Curative and rehabilitative care produce long-term changes.

[3] We note that neither party argues on appeal that the intrathecal pump is "controversial" or "experimental" which could require that the Board more closely examine the medical treatment's eligibility for coverage under (4) of the "proper and necessary" definition of WAC 296-20-01002.

eligibility criteria of treatment procedures like Roller's surgery. RCW 51.04.020, .030; *see also Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 542, 886 P.2d 189 (1994) ("the Department has subject matter jurisdiction to adjudicate all claims for workers' compensation"). But this argument ignores (1) that no regulation clearly excludes Roller's medically necessary treatment and (2) the conflict between WAC 296-20-03014, -03002, and -01002. And as discussed further below, the Department's narrow reliance on WAC 296-20-03014 and -03002 to deny Roller's claim fails to consider analogous regulations that provide treatment with opioids under certain circumstances.

¶15 Roller also challenges the reasonableness of the Department's interpretation and applicability of both WAC 296-20-03014 and -03002 to the intrathecal pump and its accompanying surgical implantation. We separately address each regulation.

## A. WAC 296-20-03014

¶16 Roller argues that the Department misinterpreted WAC 296-20-03014 in denying coverage for the pump and its surgical implantation because the regulation's plain language is specific to prescription drugs. We agree.

¶17 WAC 296-20-03014, which was last amended in 1986, provides in relevant part:

> Which *drugs* have specific limitations? (1) Injectables. *Prescriptions* for injectable opioids or other analgesics, sedatives, antihistamines, tranquilizers, psychotropics, vitamins, minerals, food supplements, and hormones are not covered . . . .
>
> (2) Noninjectable *scheduled drugs* administered by other than the oral route. Nonoral routes of administration of scheduled drugs that result in systemic availability of the drug equivalent to injectable routes will also not be covered.

WAC 296-20-03014 (emphasis added).

¶18 The plain language of WAC 296-20-03014(2) excludes coverage only for certain drugs, not for their administration routes. Roller seeks coverage for the intrathecal pump and its accompanying surgical implantation, not an opioid prescription. The Department fails to meaningfully respond to Roller's plain reading and interpretation of WAC 296-20-03014. Instead, the Department consistently mischaracterizes Roller's claim as a prescription for opioids. *See, e.g.*, AR at 68 (*"As an injectable opioid*, the intrathecal pain pump is specifically excluded and may not be provided under the Industrial Insurance Act.") (emphasis added).

¶19 Thus, WAC 296-20-03014 is inapplicable to Roller's specific coverage claim. Consequently, the Department's denial of payment under WAC 296-20-03014 is an unreasonable interpretation of the regulation.[4]

## B. WAC 296-20-03002

¶20 Roller further contends that the Department misinterpreted WAC 296-20-03002 in denying coverage for the intrathecal pump and its accompanying surgical implantation.

¶21 WAC 296-20-03002 provides, in relevant part:

The department or self-insurer will not allow nor pay for following treatment:

. . . .

(2) Iontophoresis; prolotherapy; acupuncture; injections of colchicine; injections of fibrosing or sclerosing agents; and injections of substances other than anesthetic or contrast into the subarachnoid space (intra-thecal injections).

¶22 Roller's arguments here primarily mirror his assertions under WAC 296-20-03014. He emphasizes that he is not seeking coverage for injections of opioids; rather, he is seeking payment for the pump and its surgical implantation, which was prescribed as medically necessary to relieve

---

[4] Given our analysis, we do not need to address Roller's challenge to the Board's refusal to consider additional evidence under CR 60(b).

chronic and severe pain. And as previously discussed, Roller's pump has successfully improved his functionality.

¶23 Thus, WAC 296-20-03002 is inapplicable to Roller's specific coverage claim. Further, the Department's reliance on WAC 296-20-03014 and -03002 to deny his claim fails to acknowledge WAC 296-20-03019 and related regulations that allow for medical treatment with opioids under certain circumstances.

¶24 Under WAC 296-20-03019, the Department "may pay for oral opioids for the treatment of chronic, noncancer pain caused by an accepted condition when that treatment is proper and necessary. *See* WAC 296-20-01002 for the definition of 'proper and necessary' health care services." This regulation defines chronic, noncancer pain as "pain that typically persists beyond two to four months following the injury." WAC 296-20-03019. With proper documentation submitted by the injured worker's physician, the Department will continue to pay for an opioids prescription. WAC 296-20-03020, -03021.

¶25 Roller's claim here does *not* seek an opioid prescription. But as previously discussed, the regulations do not expressly prohibit Roller's intrathecal pump and accompanying surgery, and it is undisputed that Roller's pump is rehabilitative and increasing his functionality. Further, the intrathecal pump does not inherently require the use of opioids to have a rehabilitative effect. Although WAC 296--20-03019 concerns oral opioids, this regulation's requirement that the opioids be medically necessary under WAC 296-20-01002 is more dispositive than the method of administration of the opioids. Given that any ambiguity in the regulations must be resolved in favor of Roller, it is troublesome that the Department so narrowly interpreted WAC 296-20-03014 and -03002 in order to reject his claim while ignoring WAC 296-20-03019 and related regulations that are arguably analogous to his undisputed medically necessary treatment.

¶26 Thus, we hold that the Department erroneously denied Roller's coverage request. Because we hold that

Roller is entitled to the relief he seeks based on the Department's misinterpretation of its regulations, we do not address his other arguments. We reverse and direct the Department to pay for the cost of Roller's intrathecal pump and its accompanying surgical implantation.

### III. ATTORNEY FEES AND COSTS

¶27 Roller has requested attorney fees and costs pursuant to RCW 51.52.130. Because we reverse the Board's decision, we remand for determination of reasonable fees for the service of his attorney before the superior court and the Court of Appeals. *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 670-72, 989 P.2d 1111 (1999); *Fred Meyer, Inc. v. Shearer*, 102 Wn. App 336, 340-41, 8 P.3d 310 (2000).

MORGAN, A.C.J., and BRIDGEWATER, J., concur.

Reconsideration granted and opinion modified September 20, 2005.