154 P.3d 287 (2007)
WASHINGTON CEDAR & SUPPLY COMPANY, INC., Appellant,
v.
STATE of Washington DEPARTMENT OF LABOR AND INDUSTRIES, Respondent.
Nos. 34009-7-II, 34441-6-II.
Court of Appeals of Washington, Division 2.
March 20, 2007.
*289 Jerald A. Klein, Seattle, WA, for Appellant.
David Ira Matlick, Attorney General's Office, Tacoma, WA, for Respondent.

PART PUBLISHED OPINION
BRIDGEWATER, P.J.
¶ 1 At oral argument, we consolidated two cases, cause no. 34009-7-II and cause no. 34441-6-II, involving the Washington Department of Labor and Industries and Washington *290 Cedar & Supply Company, Inc. We address both in this joint opinion. We affirm in part and reverse in part.
¶ 2 Both cases involve citations for Washington Cedar's failure to ensure that its employees use a fall safety system[1] while working on a roof, a violation of the Washington Industrial Safety and Health Act (WISHA) regulations. WAC 296-155-24510. We affirm these citations in both cases because Washington Cedar did not ensure use of the equipment it provided. In cause no. 34441-6-II, we hold that the Department was not required to follow the civil rules of superior court and serve the registered agent of the errant company; sending notice of the citation by certified mail to the yard manager was sufficient for due process. In cause no. 34009-7-II, we also affirm the citation for lack of a safety plan because specific fall hazards were not listed on a preprinted form that was perfunctorily filled out. But we reverse the citation regarding the required safety meeting for lack of substantial evidence.
¶ 3 Because they are common to both cases, we will first address the proper interpretation of WAC 296-155-24510, the affirmative defenses to a violation of that standard, and Washington Cedar's constitutional challenge. And we address Washington Cedar's challenge to notice required for the Department citation in cause no. 34441-6 in this joint section because it is generally applicable. We address the factual issues unique to each case in the unpublished portion of our opinion.

I. Statutory and Regulatory Scheme
¶ 4 We begin by noting that both consolidated cases involve a similar factual scenario in which Washington Cedar supplied fall safety equipment but its employees did not use that equipment. In both cases, a Department inspector watched Washington Cedar employees on roofs moving roofing materials without using fall protection equipment. In one case, the employee wore a harness that was not attached to a roof anchor, in the other, the equipment was in the truck. In both cases, the employees were exposed to a fall of more than 10 feet.
¶ 5 In response to these violations, the Department cited Washington Cedar for violating WAC 296-155-24510, which requires an employer to provide, install, and implement a fall restraint system any time an employee is working where he or she may fall more than 10 feet. Washington Cedar appealed these citations to the Board of Industrial Insurance Appeals, whose industrial appeals judge (IAJ) held hearings. After the IAJ upheld these fall safety citations, Washington Cedar appealed to the superior court, which also affirmed the citations.

A. Duties Under WAC 296-155-24510
¶ 6 Washington Cedar asks us to interpret WAC 296-155-24510, as a "hardware requirements" regulation rather than a safety regulation. Amended Br. of Appellant (no. 34009-7) at 18. Washington Cedar urges us to hold that the safety standard requires an employer to only provide a fall safety system that meets the regulation's technical requirements. The Department responds that the regulation requires that, in addition to providing appropriate fall safety gear, employers ensure that its employees use fall protection. We agree with the Department's interpretation of the regulation.
¶ 7 We interpret agency regulations as if they were statutes. Roller v. Dep't of Labor & Indus., 128 Wash.App. 922, 926-27, 117 P.3d 385 (2005) (quoting Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus., 122 Wash.App. 402, 409, 97 P.3d 17 (2004), aff'd, 157 Wash.2d 90, 135 P.3d 913 (2006)). Our review is, therefore, de novo, but we give substantial weight to an agency's interpretation of statutes and regulations within its area of expertise. Roller, 128 Wash.App. at 926-27, 117 P.3d 385. Accordingly, we will uphold an agency's interpretation of a regulation if it reflects a plausible construction of the statutory language and is not contrary to the legislature's intent and purpose. Roller, 128 Wash.App. at 926-27, 117 P.3d 385. But we retain the ultimate responsibility for interpreting *291 a statute or regulation. Children's Hosp. & Med. Ctr. v. Dep't of Health, 95 Wash.App. 858, 864, 975 P.2d 567 (1999), review denied, 139 Wash.2d 1021, 994 P.2d 847 (2000).
¶ 8 Before interpreting this specific regulation, we must address Washington Cedar's argument that the Department's interpretation of its own regulation is not entitled to deference. Washington Cedar argues that such deference is only appropriate where interpreting the statute requires special expertise. According to Washington Cedar, defining terms in the regulation is not within the Department's expertise.
¶ 9 To support this position, Washington Cedar cites Willowbrook Farms v. Dep't of Ecology, 116 Wash.App. 392, 397, 66 P.3d 664 (2003). But Willowbrook is inapposite. In Willowbrook, Division Three of this court declined to give deference to the Department of Ecology when interpreting the word "ministerial" in a water rights statute. Willowbrook, 116 Wash.App. at 394, 397, 66 P.3d 664. The court reasoned that "the questionwhat is ministerial when filing a required government formis not something requiring the expertise of an administrative board." Willowbrook, 116 Wash.App. at 397, 66 P.3d 664.
¶ 10 But this case, unlike Willowbrook, does involve the Department's area of expertise. In interpreting the duties a substantive safety regulation imposes, the Department is acting within the scope of its expertisepromoting safety in the work place. Therefore, although we retain the ultimate authority to determine the regulation's meaning, giving deference to the Department's interpretation of its own regulation is appropriate.
¶ 11 Having decided that deference is appropriate in this case, we now discuss the applicable principles of statutory construction. If a regulation is unambiguous, we will not look beyond the plain meaning of the words in the regulation. Mader v. Health Care Auth., 149 Wash.2d 458, 473, 70 P.3d 931 (2003). In determining the plain meaning of the regulation, we may also look to the entire statutory scheme. Mader, 149 Wash.2d at 473, 70 P.3d 931. Our interpretations must give meaning to every word in the statute or regulation. Berrocal v. Fernandez, 155 Wash.2d 585, 121 P.3d 82 (2005). Our goal is to achieve a harmonious total statutory scheme and avoid conflicts between different provisions. Lee Cook Trucking & Logging v. Dep't of Labor & Indus., 109 Wash.App. 471, 481, 36 P.3d 558 (2001).
¶ 12 Specifically, when interpreting a WISHA regulation, we interpret it in the light of the WISHA statutes and regulations as a whole. Netversant v. Dep't of Labor & Indus., 133 Wash.App. 813, 825, 138 P.3d 161 (2006). We keep in mind that we interpret WISHA statutes and regulations liberally to achieve their purpose of providing safe working conditions for every worker in Washington. Inland Foundry Co. v. Dep't of Labor & Indus., 106 Wash.App. 333, 336, 24 P.3d 424 (2001) (citing RCW 49.17.010).
¶ 13 With these principles in mind, we turn to the regulation in question. The fall restraint regulation provides:
When employees are exposed to a hazard of falling from a location 10 feet or more in height, the employer shall ensure that fall restraint, fall arrest systems, or positioning device systems are provided, installed, and implemented according to the following requirements.
WAC 296-155-24510. The rest of the regulation details the specifications that a fail restraint, fall arrest or position device system must meet.
¶ 14 The Department interprets this regulation to mean that the employers have a duty to provide a fall safety system and a duty to make certain its employees use that system. Thus, under the regulation's plain language, the employer has a duty to provide a fall safety system and to ensure that its employees use that system; i.e., that the system is "installed, and implemented."
¶ 15 We agree with the Department's interpretation. The regulation's plain language imposes three mandatory duties on employers. First, the employer "shall ensure" that fall safety systems "are provided." Second, the employer "shall ensure" that fall *292 safety systems "are . . . installed." Third, the employer "shall ensure" that fall safety systems "are . . . implemented." WAC 296-155-24510. Where a regulation uses a non-technical term like "ensure" we may look to the dictionary for guidance. State v. Pacheco, 125 Wash.2d 150, 154, 882 P.2d 183 (1994). "[E]nsure" means to "make sure, certain, or safe." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 756 (2002). Thus, this regulation's plain language requires employers to make certain that a fall system is provided, installed, and implemented. In other words, the employer must ensure that it provides safety equipment and that its employees use that equipment.
¶ 16 Washington Cedar objects that this interpretation makes the language "according to the following requirements" superfluous. WAC 296-155-24510. Washington Cedar is incorrect. The regulation requires that a fall safety system, meeting the requirements specified in the remainder of the regulation, be provided and used. Thus, the Department's interpretation does not render any statutory language superfluous.
¶ 17 Washington Cedar next argues that the Department's interpretation collapses the separate duties of employers and employees. For example, WISHA requires each employee to comply with all WISHA provisions. RCW 49.17.110. Washington Cedar argues that this means that employees rather than employers have the duty to comply with safety regulations. For further support, Washington Cedar observes that in some regulations, the Department has delineated separate duties. For example, Washington Cedar points out, WAC 296-155-200 requires construction personnel to comply with job safety practices and procedures, while requiring that employers be responsible for requiring the wearing of appropriate personal protective equipment. WAC 296-155-200(3), (4).
¶ 18 Even though Washington Cedar correctly notes that employees must comply with safety rules, it is entirely consistent with the overall purpose of WISHA to impose overlapping duties on both employees and employers. In fact, while WISHA imposes a duty on employees to follow applicable WISHA regulations, it also requires that "[e]ach employer . . . [s]hall comply with the rules, regulations, and orders promulgated under this chapter." RCW 49.17.060(2). Such overlapping duties further WISHA's ultimate goal of ensuring a safe work place.
¶ 19 We also note that the Department's interpretation of the fall protection regulation is the most consistent with WISHA's enforcement scheme. WISHA authorizes the Department to issue citations and sanctions for violations of WISHA regulations. RCW 49.17.120(1). The statute also provides an affirmative defense to citations for unpreventable employee misconduct. RCW 49.17.120(5)(a). As the Department points out, this affirmative defense only makes sense if the employer can be held responsible for the employees' actions. Thus, in keeping with WISHA's statutory scheme, the Department's interpretation of the regulation as imposing a duty on the employer is more plausible.
¶ 20 Thus, WAC 296-155-24510 imposes a duty on employers to ensure that their employees use a fall safety system when working at a location from which they might fall more than 10 feet. The employer may then avoid responsibility for the violation if it can establish the affirmative defense of unavoidable employee misconduct.
¶ 21 Washington Cedar next argues that we should interpret this regulation to be a general duty regulation.[2] There are two kinds of duties under the safety regulations: general and specific. Dep't of Labor & Indus. v. Kaiser Aluminum & Chem. Co., 111 Wash.App. 771, 780, 48 P.3d 324 (2002). A general duty is a non-specific duty that an employer take all reasonable steps to protect the safety of its employees. See Kaiser Aluminum, 111 Wash.App. at 780, 48 P.3d 324 (describing the general duty to "do every other thing reasonably necessary" in former WAC 296-24-073(2) (1994)). If the Department *293 issues a general duty citation, it must specify the steps an employer should have taken and that those measures were feasible. Kaiser Aluminum, 111 Wash.App. at 782, 48 P.3d 324. A general duty governs unless a more specific standard applies. Kaiser Aluminum, 111 Wash.App. at 780, 48 P.3d 324.
¶ 22 We have already implicitly acknowledged that a violation of the fall safety regulation is a specific duty rather than a general one. We did so by describing the elements for a fall safety citation without requiring the Department to prove what steps an employer should have taken. Wash. Cedar & Supply Co. v. Dep't of Labor & Indus., 119 Wash.App. 906, 914, 83 P.3d 1012, review denied, 152 Wash.2d 1003, 101 P.3d 866 (2004). We now hold explicitly that the fall safety regulation imposes a specific rather than general duty to ensure that fall safety systems are provided and used. Therefore, the Department does not have to prove what steps Washington Cedar failed to take; it is enough to show that the company did not comply with the regulation.

B. Affirmative Defenses
¶ 23 In order to complete the context of the Washington Cedar's duty under WAC 296-155-24510, we briefly describe two affirmative defenses Washington Cedar presented. Washington Cedar argued that this was unavoidable employee misconduct and that it should be allowed to present an infeasibility defense based on financial cost.
¶ 24 As we indicated above, Washington's statutory scheme for safety regulations recognizes a defense of unavoidable employee misconduct. RCW 49.17.120(5)(a). The employer bears the burden of proving that (1) it has a thorough safety program designed to prevent violations; (2) it has adequately communicated the program to its employees; (3) it takes steps to discover and correct violations of it rules; and (4) its safety program is effective in practice. Legacy Roofing, Inc., v. Dep't of Labor & Indus., 129 Wash.App. 356, 362-63, 119 P.3d 366 (2005). In order to show that a safety program is effective in practice, it must show that the employee's misconduct was an isolated occurrence and was not foreseeable. Wash. Cedar, 119 Wash.App. at 912, 83 P.3d 1012.
¶ 25 Washington Cedar also argues that it should have been able to present an infeasibility defense. To support its argument, Washington Cedar relied on a federal case, Bancker Constr. Corp. v. Reich, 31 F.3d 32 (2d Cir.1994). In interpreting our WISHA regulations in the absence of state decisions, we may look to the federal Occupational Safety and Health Administration (OSHA) regulations and consistent federal decisions. Adkins v. Aluminum Co. of Am., 110 Wash.2d 128, 147, 750 P.2d 1257, 756 P.2d 142 (1988); 29 U.S.C § 651 et seq. Assuming, without deciding, that Washington law recognizes a similar affirmative defense,[3] we hold, following federal precedent, that an affirmative infeasibility defense requires an employer to prove that compliance is technically impossible or that that compliance would have exposed the employees to a greater hazard. Bancker Constr., 31 F.3d 32, 34 (2d Cir.1994).

C. Vagueness
¶ 26 Washington Cedar's next argues that if we adopt the Department's interpretation, the regulation would be unconstitutionally vague. We disagree.
¶ 27 A duly adopted regulation is presumed constitutional. Inland Foundry, 106 Wash.App. at 339, 24 P.3d 424 (citing Longview Fibre Co. v. Dep't of Ecology, 89 Wash.App. 627, 632, 949 P.2d 851 (1998)). The party raising a vagueness challenge bears the heavy burden of proving the regulation's unconstitutionality beyond a reasonable doubt. Inland Foundry, 106 Wash.App. at 339, 24 P.3d 424. A regulation is unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning and disagree as to its application. Inland Foundry, 106 Wash.App. at 339, 24 P.3d 424. *294 The regulation does not, however, have to provide complete certainty. Inland Foundry, 106 Wash.App. at 339-340, 24 P.3d 424.
¶ 28 Here, the regulation requires an employer to ensure that it provides, installs, and implements a fall-safety system, meeting the regulations specifications. As indicated above, that means that an employer must make certain that it provides a safety system and that its employees use it. When an employee fails to use a safety system and the employer cannot prove unavoidable employee misconduct, the regulation is violated. The meaning of this regulation is not so vague that Washington Cedar cannot understand its meaning. Its constitutional challenge fails.

D. Notice
¶ 29 Washington Cedar contends that because the Department did not serve its registered agent for service of process in cause no. 34441-6-II, the citation notice was not sufficient. Washington Cedar's position turns on a WAC 263-12-125 that requires the Board to follow the superior court's civil rules of procedure where applicable. From this regulation, Washington Cedar asks us to conclude that CR 4's requirements governing service apply and that the Department failed to meet CR 4. We reject Washington Cedar's argument.
¶ 30 We review procedural errors, such as lack of proper notice, de novo. Reg'l Transit Auth. v. Miller, 156 Wash.2d 403, 412, 128 P.3d 588 (2006). Because this case turns on our interpretation of regulations and statutes, we must engage in statutory construction. We interpret unambiguous statutes and regulations according to their plain meaning. Mader, 149 Wash.2d at 473, 70 P.3d 931. We give an agency's interpretation of statutes and regulations within its area of expertise special substantial weight. Roller, 128 Wash.App. at 926-27, 117 P.3d 385.
¶ 31 The WISHA statutes authorize the Department to issue citations for violations of the WISHA statutes and regulations. RCW 49.17.120(1). The statute actually has two forms of notice. First, the citation or copies of it must be prominently posted at or near each place a violation occurred. RCW 49.17.120(3). Second, the Department must "notify the employer by certified mail." RCW 49.17.140(1). The Department regulations echo this requirement and mandate that the Department mail a citation and notice to an employer. WAC 296-900-13005. Neither the regulation nor the statute specifies who should receive service for the employer.
¶ 32 The Department contends that service on Washington Cedar's yard manager is sufficient to meet the requirement that notice be sent to the employer. We agree. Notice must be reasonably calculated, under all circumstances, to apprise all interested parties of the action and afford them the opportunity to present their objections. Duskin v. Carlson, 136 Wash.2d 550, 557, 965 P.2d 611 (1998).
¶ 33 On the facts of this case, sending notice of the violation to Washington Cedar's yard manager who was also in charge of safety enforcement was a reasonable way to achieve notice. In fact, Washington Cedar was able to file its notice of appeal on the same day that its yard manager received the mailed notice.
¶ 34 This interpretation is in line with other decisions involving the Department. In determining that service by certified mail in worker's compensation cases was appropriate, our Supreme Court noted that certified mail is both efficient and inexpensive and satisfies due process. Duskin, 136 Wash.2d at 557-58, 965 P.2d 611. Where a company delivers goods from a particular location and the employee involved violates a regulation, it is appropriate to mail the notice to the manager of the delivery center from which the employee came. That person is very likely to either have the authority to handle citations or the responsibility to forward them on in a timely manner. Such notice is reasonably calculated to apprise all interested parties.
¶ 35 This interpretation of the statute also squares with the federal OSHA Committee interpretation of its federal regulations. Interpreting a statute very similar to Washington's, *295 OSHA Committee requires service "`reasonably calculated to provide an employer with knowledge of the citation and notification of proposed penalty.'" Sec'y of Labor v. Baker Support Servs., Inc., 18 OSHC (BNA) 2200 at *5, 2000 WL 1182906 (2000) (quoting Secretary of Labor v. B.J. Hughes, Inc., 7 OSHC (BNA) 1471, 1979 WL 8462 (1979)). Under that formulation of the test, so long as the Department's notice is likely to be passed along to the appropriate officials, service is appropriate.
¶ 36 Washington Cedar cites Buckley & Company., Inc. v. Secretary of Labor, 507 F.2d 78 (3d Cir.1975).[4] In Buckley, the Federal Third Circuit Court of Appeals reviewed an administrative ruling that an employer could not challenge a citation because the employer had not responded within 15 days of receiving notice of the citation. Buckley, 507 F.2d at 79-80. OSHA served the superintendent of Buckley's maintenance shop where a fatal accident occurred. Buckley, 507 F.2d at 80. The superintendent was Buckley's representative during the OSHA inspection and participated in the closing conference. Buckley, 507 F.2d at 80-81. The court reasoned that because the superintendent was the employee who might be considered responsible for the circumstances leading up to the violation, he might have an incentive to cover up his derelictions and not forward citations to his superiors. Buckley, 507 F.2d at 80-81. Based on this concern and the theory that the goal of OSHA was to abate dangerous conditions, the court concluded that notice should be given to officials at corporate headquarters with the authority to disperse corporate funds to abate the condition. Buckley, 507 F.2d at 80-81.
¶ 37 Buckley does not aid Washington Cedar. The Buckley court did not hold that lack of notice voided the citation. Instead, the Buckley court merely allowed the employer to contest a citation where the time for appeal had passed. Buckley, 507 F.2d at 81. This resultextending the time for the employer to challenge a citationwas confirmed in the Sixth Circuit as well. Capital City Excavating Co. v. Donovan 679 F.2d 105, 110 (6th Cir.1982). But Washington Cedar received actual notice and had the opportunity to litigate the citation fully. Thus, even under the reasoning in Buckley, Washington Cedar was not prejudiced and would not be entitled to relief.
¶ 38 But we decline to follow the Buckley court's interpretation in this case. The Buckley court was concerned that an employee might deceive a corporation by covering up a citation. Buckley, 507 F.2d at 80-81. Here, there was no reasonable possibility that the yard manager was going to cover up the citation. The Department was not going to forget about a penalty and such a cover up would have inevitably failed. Eventually, the Department would have contacted someone about the citation. So long as Washington Cedar was allowed to contest the citation, as it was here, the service on the yard manager was sufficient.
¶ 39 The Buckley court also wished to promote abatement of dangerous conditions. Buckley, 507 F.2d at 80. This goal is adequately served by giving the citation to the person in charge of safety at the specific worksite, or in this case, the regional distribution center. Service on a corporate officer, if anything, adds another layer for people to contact before the unsafe condition might be redressed.
¶ 40 We also expressly reject Washington Cedar's proposed interpretation applying CR 4's rules. Washington Cedar relies on WAC 263-12-125, which provides that proceedings before the Board of Industrial Insurance Appeals are governed by the statutes and rules governing civil cases in superior courts. WAC 263-12-125. A citation issued by the Department is not a proceeding before the Board. If a citation is not appealed to the Board, it becomes a final agency action not subject to review by any court or agency. RCW 49.17.140(1). Moreover, as discussed above, the WISHA statutes contain their own notice provisions for citations. And specific provisions control over general regulations. Spokane v. Taxpayers of Spokane, 111 *296 Wash.2d 91, 102, 758 P.2d 480 (1988). Therefore, the notice required in this case was notice via certified mail to the employer. There was no error.
¶ 41 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: ARMSTRONG and QUINN-BRINTNALL, JJ.
NOTES
[1] WAC 296-155-24510 refers to fall restraint systems and fall arrest systems. For ease of reading this opinion, we refer to these systems as fall safety systems.
[2] Washington Cedar raises this only in cause No. 34441-6, but it is applicable to both cases so we address it here.
[3] Because we hold below that Washington Cedar failed to show that compliance was physically impossible or more dangerous, we do not address whether Washington recognizes this defense.
[4] We note that although this is a federal circuit opinion, the OSHA Committee does not feel itself bound by the federal circuit decisions. Baker Support Servs., Inc., 18 OSHC (BNA) 2200 at *5, 2000 WL 1182906.