[No. 25733-9-III. Division Three. March 20, 2008.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant,* v. TYSON FOODS, INC., *Respondent.*

578

*Robert M. McKenna, Attorney General*, and *Bourtai B. Hargrove, Assistant*, for appellant.

*Jeffrey B. Youmans* (of *Davis Wright Tremaine, LLP*), for respondent.

¶1 BROWN, J. — The Department of Labor and Industries (L&I) appeals a superior court's affirming a Board of Industrial Insurance Appeals' (Board) administrative ruling applying regulations WAC 296-800-16015 and -16020 under the Washington Industrial Safety and Health Act of 1973, chapter 49.17 RCW. L&I contends the superior court and the Board erred as a matter of law in concluding Tyson Foods, Inc., did not improperly fail to identify (select) certain employee positions as requiring rubber boots and paying for the boots at no cost to the affected employees. Because the Board and the superior court correctly applied the Washington Administrative Code (WAC) definition for "hazard," we disagree with L&I and affirm.

## FACTS

¶2 Tyson operates a beef processing facility in Wallula, Washington. The plant includes a slaughter department known as the "kill floor," where employees drain the cattle blood, remove the head, tail, hide, and internal organs, and dismantle the carcass for further processing. Clerk's Papers (CP) at 28. Relevant here, Tyson did not select 16 positions on the kill floor as needing rubber boots and *require* affected workers to wear the boots as personal protective equipment (PPE).

¶3 In 2003, L&I inspected the facility after receiving a union complaint that Tyson failed to pay for rubber (wet) boots for employees on the kill floor. L&I cited Tyson (No. 1a) for failure to "select" wet boots as PPE for 16 employee positions under WAC 296-800-16015(1), and (No. 1b) for failure to provide the PPE at no cost to the employees under WAC 296-800-16020. L&I inspector Rick Gastelum believed the presence of cattle blood, body fluids, and excrement might subject the affected employees to possible exposure to brucellosis and E. coli (Escherichia coli). Tyson unsuccessfully appealed the citation to L&I before appealing to the Board, where an industrial appeals judge (IAJ) was assigned to hear the matter and ruled for Tyson.

¶4 Testimony showed Mr. Gastelum did not test for biological hazards during his inspection and he did not inspect Tyson's Occupational Safety and Health Administration 300 illness and injury logs. According to Mr. Gastelum, a 2001 comprehensive inspection of the facility showed no evidence of employee exposure to brucellosis or E. coli. He agreed brucellosis is rare, with only 100 to 200 cases reported annually in the United States; he did not know how many cases involved cattle or slaughterhouses, or whether any cases occurred in Washington. He agreed he was "not aware of any evidence that brucellosis bacteria has ever actually been present at the Tyson plant," he was "not aware of any reported cases of cattle brucellosis in Wash-

ington state since 1988," and he was not aware of any case involving a Washington slaughterhouse. CP at 275, 272. He acknowledged the United States government requires all cattle be vaccinated for brucellosis.

¶5 Mr. Gastelum further acknowledged E. coli is "primarily a food-borne illness" contracted by eating contaminated products. CP at 276. He agreed E. coli forms in an animal's intestines and was "not aware of any reason that any of the[] 16 cited employees would come into contact with fecal material" since no employees cut into the animals' intestines. CP at 285. He agreed he was "not aware of any evidence that E. coli bacteria has ever actually been -- ever been present on Tyson's kill floor" and was "not aware of any reported case of an employee acquiring E. coli poisoning in Washington state at a slaughter house." CP at 285, 276-77. He further agreed there is a "very low probability," "less than 1 percent," that Tyson Foods' employees would be exposed to brucellosis or E. coli. CP at 285-86.

¶6 Industrial hygienist Michael Smith testified he saw no risk of employee exposure to brucellosis under the specific conditions at Tyson's plant and he saw "no evidence" that brucellosis or E. coli were present on Tyson's kill floor. CP at 403. He testified Washington cattle have been brucellosis-free since 1988.

¶7 Tyson Plant Safety Coordinator Loren Schroeder testified there has been no case of brucellosis or E. coli in the 21 years he has worked at the facility, and no cases nationwide in the 32 years he has been with the company. He had no information that would lead him to believe Tyson slaughters any cattle at risk for brucellosis.

¶8 Tyson Superintendent Trainee Jesus Espinoza testified employees can buy rubber boots from Tyson or outside sources, and may leave their boots in company lockers or take them home. He testified he has taken his rubber boots home for personal use and he has seen another employee take rubber boots from the premises. L&I safety and health specialist Michael Lundeen conceded employers are ordinarily not required to pay for PPE that can be used outside

the workplace. He agreed "wet boots . . . would typically be the sort of PPE that an employer would not have to pay for" since they could be used outside the workplace. CP at 338-39.

¶9 In November 2004, the IAJ issued a proposed decision and order, partially affirming the WAC 296-800-16015(1) violation and vacating the WAC 296-800-16020 violation. The IAJ ruled WAC 296-800-16015(1) limited the regulatory definition of "hazard" for PPE purposes, and it applied this limited definition to WAC 296-800-16020. The IAJ ruled L&I failed to show Tyson's employees are exposed to a "present" or "likely" hazard of contracting brucellosis or E. coli. CP at 19-29. Instead the IAJ found Tyson failed to provide *four* employee positions with dry places to work, including gratings, grated platforms, or waterproof footwear, "expos[ing] the workers to the serious hazard presented by the *extremely wet processes* in their work areas." CP at 28 (emphasis added); *see* CP at 23. It found employee wet boots were PPE "that would normally and reasonably be worn away from the workplace and would not be used to protect against hazardous materials." CP at 29.

¶10 L&I unsuccessfully petitioned the Board for review; the Board accepted the IAJ's proposed decision and order as its final decision. L&I unsuccessfully appealed to the superior court. L&I appeals.

## ANALYSIS

¶11 The issue is whether the Board erred as a matter of law in ruling Tyson did not violate the "select" provision of WAC 296-800-16015 and in eliminating the need under WAC 296-800-16020 for Tyson to pay for the wet boots as PPE. The deeper issue is whether the Board properly applied the definition of "hazard" to the WAC sections as meaning a hazard exists only if a hazard is "present" or "likely" to be present.

¶12 We stand in the same position as a superior court in reviewing administrative board rulings. *Farm*

*Supply Distribs., Inc. v. Wash. Utils. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974). We review de novo a Board's interpretation of agency regulations, reviewing the regulations as statutes. *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004), *aff'd*, 157 Wn.2d 90, 135 P.3d 913 (2006). We "review the agency's interpretation under an error of law standard, which allows [this] court to substitute its own interpretation of the statute or regulation for the Board's interpretation." *Id*. We give great weight to an agency's interpretation of a regulation within its area of expertise if the interpretation is not in conflict with the regulatory language; we are not bound by an agency's interpretation. *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 137 Wn. App. 592, 598, 154 P.3d 287 (2007). Unchallenged findings of fact are verities on appeal. *Roller v. Dep't of Labor & Indus.*, 128 Wn. App. 922, 927, 117 P.3d 385 (2005). Findings of fact not entered are deemed found against the party asserting them. *Lewis v. Estate of Lewis*, 45 Wn. App. 387, 392, 725 P.2d 644 (1986).

¶13 We look no further than the plain language of a facially unambiguous administrative regulation. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). A regulation is unambiguous if it is susceptible to one reasonable interpretation after considering the entire statutory scheme, including related regulations. *Wash. Cedar & Supply Co.*, 137 Wn. App. at 599-600; *Dep't of Labor & Indus. v. Gongyin*, 154 Wn.2d 38, 45, 109 P.3d 816 (2005). Regulatory definitions apply and any undefined terms are given their ordinary definition as defined in the dictionary. *Habitat Watch v. Skagit County*, 155 Wn.2d 397, 423, 120 P.3d 56 (2005); *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 471-72, 61 P.3d 1141 (2003). Our goal in interpreting an administrative regulation is to "achieve a harmonious total statutory scheme and avoid conflicts between different provisions." *Wash. Cedar & Supply Co.*, 137 Wn. App. at 599-600.

¶14 WAC 296-800-16015 establishes when an employer is required to "select" PPE to protect employees

from workplace hazards. WAC 296-800-16015 states, "You must: (1) Select appropriate PPE. * Select appropriate PPE for your employees if hazards are *present*, or *likely* to be present." (Emphasis added.) WAC 296-800-16020 establishes when the employer is required to provide and pay for PPE:

> [Employer] must: [(1)] Provide PPE wherever hazards *exist* from: [ ] Processes or the environment [(2)] *Provide necessary PPE to employees at no cost to the employee if the PPE*: [ ] Will be used to protect against hazardous materials[;] Is the type that would not reasonably or normally be worn away from the workplace, such as single use or disposable PPE.

(Emphasis added.) "Examples of PPE that the employer *must* provide are: * Boots or gloves that could become contaminated with hazardous materials in the workplace." WAC 296-800-16020. "Hazard" is defined in WAC 296-800--370 as "[a]ny condition, potential or inherent, which can cause injury, death, or occupational disease." The term "likely" is ordinarily defined as probable, not merely possible. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310 (1993) ("of such a nature or so circumstanced as to make something probable").

¶15 Reviewing the regulations in context with one another and applying the definitions, an employer is required to "[s]elect appropriate PPE for . . . employees if hazards [('[a]ny condition, potential or inherent, which can cause injury, death, or occupational disease')] are *present*, or *likely* ['*probable*'] to be present." WAC 296-800-16015(1) (emphasis added) (quoting WAC 296-800-370; WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310). An employer must then provide and pay for "*select[ed]*" PPE that "[w]ill be used to protect against hazardous materials[; or i]s the type that would not reasonably or normally be worn away from the workplace, such as single use or disposable PPE." WAC 296-800-16015, -16020.

¶16 Here, the Board properly interpreted WAC 296-800--16015(1) and WAC 296-800-16020 in partially affirming

Tyson's violation for failure to "select" wet boots as appropriate PPE (for four employee positions) and vacating the violation for failure to pay for the boots. Based on this record and the Board's unchallenged findings of fact, L&I fails to show: (1) employees were exposed to a "present" or "likely" hazard of exposure to brucellosis or E. coli and (2) employee wet boots were the type not "normally and reasonably . . . worn away from the workplace." CP at 29. Accordingly, the Board and the superior court did not err.

¶17 Affirmed.

SWEENEY, C.J., and KULIK, J., concur.