**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

AMAZON.COM.DEDC LLC,

               Appellant,

      v.

WASHINGTON STATE
DEPARTMENT OF LABOR AND
INDUSTRIES,

               Respondent.

No. 83128-3-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Amazon.com.dedc LLC (Amazon) appeals the Board of Industrial Insurance Appeals' (Board) decision affirming a citation issued by the Department of Labor and Industries (Department) for failing to have an emergency shower in an area of its warehouse where employees process corrosive chemicals. Amazon argues that the Department must prove a reasonable likelihood of exposure, rather than a potential exposure. Amazon also argues that the Department failed to establish that there was a potential for major portions of an employee's body to come into contact with corrosive chemicals. We affirm.

I.

Amazon operates a robotic system fulfillment warehouse in Kent, Washington (warehouse). The warehouse is 1 million square feet and employs between 2,500 and 4,000 employees. All items shipped to and from the warehouse are consumer products bought by individuals or households for personal use.

The warehouse is a medium HAZMAT[1] level facility. Products in the warehouse include corrosives and other hazardous materials, such as bleach, laundry detergent, and vinegar.[2] The warehouse is designed to handle items small enough to fit in a 23" long x 15.5" wide x 11" deep tote. Larger products are sent to other Amazon facilities.

Products leak or spill at the warehouse daily. When a product leaks, Amazon protocol instructs employees to remove the product from inventory using protective gloves, place it in a plastic bag, and seal the bag. The employees then place the product in the "accumulation area" bin designated for that product type.

The warehouse has a hazardous waste team consisting of two lead waste coordinators and six waste coordinators. The hazardous waste team processes all types of waste generated at the facility, hazardous and otherwise.[3] The waste coordinators move leaking products from the accumulation area bins to a gatekeeping area. The waste coordinators then sort the leaking products into distinct waste types. Three times a day, the waste coordinators move the sorted waste to the hazardous waste storage area, known as "the cage." The cage contains an emergency eyewash station.

---

[1] HAZMAT is an abbreviation of "hazardous materials."
[2] More dangerous materials, such as fireworks, gasoline, or propane, are sent to Amazon facilities designated as high level HAZMAT facilities.
[3] An item is considered waste if it can no longer be sold to customers for whatever reason.

One to four waste coordinators work in the cage at a time. The waste coordinators wear protective gloves, safety goggles, and long aprons. The waste coordinators move the products by hand to designated 55-gallon drums. Amazon's regulated waste disposal vendor, Stericycle, provides the drums which sit on secondary containment pallets designed to catch spills. When a drum is full, two waste coordinators slide the drum onto a pallet then use a pallet jack to move the drum to the loading dock about 25 feet from the cage. Stericycle picks up the waste twice a week.

In August 2018, a Department inspector, Miyoko Sasakura, inspected the warehouse. Sasakura concluded that Amazon was maintaining worker safety for hazardous materials, except for the need of an emergency shower in the cage. Sasakura found the greatest area of risk occurred when employees transferred leaking products into the drums, and the presence of powered industrial trucks around those drums increased that risk. The Department issued the citation in November 2018. Item 1-1 of the citation alleges that Amazon committed a serious violation of WAC 296-800-15030(1)[4] by failing to provide an emergency shower in the cage.

Amazon appealed the citation to the Board. Amazon argued that the Department needed to show it was "reasonably likely" that employees would contact hazardous chemicals to prove that it was required to install an emergency shower. The Board rejected Amazon's arguments and affirmed the citation, finding that there is no reasonable likelihood standard and that there is a potential for hazardous materials to

---

[4] WAC 296-800-15030(1)(a) requires an emergency shower "[w]hen there is potential for major portions of an employee's body to contact corrosives, strong irritants, or toxic chemicals."

cover major portions of an employee's body. Amazon unsuccessfully appealed the Board's decision to the superior court.

Amazon appeals.

II.

Amazon argues that the Board erred in finding that the emergency shower requirement in WAC 296-800-15030(1) applies to its facility. This is so, it asserts, because there was not a "reasonable likelihood" of "major portions" of an employee's body coming into contact with a hazardous chemical in the cage. We disagree. WAC 296-800-15030(1) unambiguously applies when there is a "potential," not a "reasonable likelihood" for a major portion of an employee's body to come into contact with a hazardous chemical.

A.

The Washington Industrial Safety and Health Act of 1973 (WISHA), ch. 49.17 RCW governs judicial review of decisions issued by the Board. Erection Co., Inc v. Dep't of Lab. & Indus., 160 Wn. App. 194, 201, 248 P.3d 1085 (2011). We review the Board's decision based on the record before the agency. Erection Co., 160 Wn. App. at 201. The Board's findings of fact are conclusive if they are supported by substantial evidence. Erection Co., 160 Wn. App. at 202. Evidence is substantial if it exists in "sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Legacy Roofing, Inc. v. Dep't of Lab. & Indus., 129 Wn. App. 356, 362-64, 119 P.3d 366 (2005). We do not reweigh evidence, but view the evidence and reasonable inferences in the light most favorable to the party that prevailed before the

Board. Frank Coluccio Constr. Co. v. Dep't of Lab. & Indus., 181 Wn. App. 25, 35, 329 P.3d 91 (2014).

"We review questions of law de novo and interpret agency regulations as if they were statutes." Schimmick Constr. Co. Inc. v. Dep't of Lab. & Indus., 12 Wn. App. 2d 770, 778, 460 P.3d 1160 (2020). We construe WISHA regulations "liberally to achieve their purpose of providing safe working conditions for workers in Washington." Frank Coluccio Constr., 181 Wn. App. at 36; RCW 49.17.010. "Substantial weight is given to the Department's interpretation of WISHA." Schimmick Constr., 12 Wn. App. 2d at 778. "In interpreting WISHA, we may look to federal decisions that interpret WISHA's federal analogue, the Occupational Safety and Health Act of 1970 (OSHA), but we will not resort to federal case law when Washington law provides controlling precedent." Schimmick Constr., 12 Wn. App. 2d at 778.

B.

To establish a prima facie case of a serious violation of WISHA, the Department must prove that: "(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition." Wash. Cedar & Supply Co., 119 Wn. App. 906, 914, 83 P.3d 1012 (2003). In its briefing, Amazon devoted a significant portion of its argument on the third factor—that the Department failed to prove its employees were exposed to, or had access to, the hazardous condition. Amazon asserted that the Department was required to prove that it is "reasonably

-5-

predictable" that employees would be in the "zone of danger."  During oral argument, however, Amazon conceded that its employees work in close proximity to corrosives while working in the cage and were thus in the "zone of danger."  Wash. Ct. of Appeals oral argument, Amazon.com.dedc LLC v. Wash. State Dep't of Lab. & Indus., No. 83128-3-I (Sept. 21, 2022), at 45 sec. to 60 sec.  Thus, the determinative factor remaining is whether the cited standard—WAC 296-800-15030(1)—applies.

WAC 296-800-15030(1) requires an employer to provide a shower "when there is potential for major portions of an employee's body to contact corrosives, strong irritants, or toxic chemicals."  The emergency shower must be located "so that it takes no more than 10 seconds to reach."  WAC 296-800-15030(3)(a).  Amazon argues that WAC 296-800-15030(1) should apply only if there is a "reasonable likelihood" that major portions of an employee's body will come into contact with corrosives.  Conversely, the Department argues that there only needs to be the potential for major portions of an employee's body to come into contact with the hazardous waste.  We agree with the Department.

Our primary goal in interpreting an administrative regulation is to give effect to the agency's intent and the regulation's underlying policies.  Clark v. City of Kent, 136 Wn. App. 668, 672, 150 P.3d 161 (2007).   We do not read terms in isolation, but within the context of the regulatory scheme.  ITT Rayonier, Inc. v. Dalman, 122 Wn.2d 801, 807, 863 P.2d 64 (1993).  We will not "add to or subtract from the clear language of a statute, rule, or regulation" even if we believe in a drafter's intent that was not adequately expressed.  Dep't of Licensing v. Cannon, 147 Wn.2d 41, 57, 50 P.3d 627 (2002).

Here, the plain language is controlling. The regulation requires an emergency shower when there is a "potential" for an employee's body to contact corrosives. We may look to the dictionary for guidance on nontechnical terms. Wash. Cedar & Supply Co., Inc. v. Dep't of Lab. and Indus., 137 Wn. App. 592, 600-01, 154 P.3d 287 (2007). The dictionary defines "potential" as "existing in possibility: capable of development into actuality" or "something that can develop or become actual." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/potential (last visited September 7, 2022). Thus, contrary to Amazon's assertion, the Department was not required to establish a "reasonable likelihood" of employee contact with corrosives to trigger the emergency shower requirement. Rather, under the regulation's plain language, an employer must provide an emergency shower whenever contact with corrosive or toxic chemicals is a potential.[5]

Furthermore, this interpretation gives effect to the agency's intentions and the regulation's underlying policies, and achieves the "purpose of providing safe working conditions for workers in Washington." Frank Coluccio Constr., 181 Wn. App. at 36. While an emergency shower may not be needed daily, a readily accessible shower is necessary to prevent dangerous consequences of chemical exposure. It would be unreasonable to adopt Amazon's stricter, reasonable likelihood standard as it conflicts

---

[5] During oral argument, Amazon argued that taken to its extreme, any workplace that has a jug of bleach in the janitor's closet would have to have an emergency shower nearby. While there may not be a clear divide between a janitor using a gallon of bleach and an Amazon associate disposing of a gallon of bleach, there is in the aggregate. A logical distinction exists between a gallon of bleach in an office kitchen or janitor's closet, and Amazon employees handling and moving large quantities of leaking bleach containers in 55-gallon drums. Logically, the potential increases with the increase in volume. While we are not establishing a bright line rule, Amazon's argument that small amounts of cleaner in closets, grocery stores, and office kitchens automatically trigger the emergency shower requirement is unpersuasive.

with both the plain language of the regulation, the regulations underlying policies, and the goal of WISHA as a whole. The Department's interpretation of potential applies.

Amazon relies on a 1993 federal administrative decision to assert that "the OSHA review commission has rejected [the Board's] construction as overbroad and inconsistent with the purpose of the standard." Appellant's Opening Br. at 31 (citing Con Agra Flour Milling Co., 16 O.S.H. Cas. (BNA) 1137, 1993 WL 127957 (U.S. Occupational Safety & Health Rev. Comm'n Apr. 22, 1993), rev'd in part on other grounds, 25 F.3d 653 (8th Cir. 1994). But contrary to Amazon's assertion, Con Agra, did not analyze the federal regulation's language. Instead, the decision summarily vacated a citation because the Secretary failed to demonstrate that "a sufficient hazard existed to require a facility for washing or flushing the eyes or body." Con Agra, 1993 WL 127957 at *7. The decision asserts that, to prove a violation, the Secretary "must show more than the mere possibility of injury." Con Agra, 1993 WL 127957 at *6.

But as this court has recently discussed, the Department need not demonstrate that an accident is "likely" to happen to prove a WISHA violation. "Put simply, in this type of endeavor, an employer exposes its employees to a violation even when it is 'extremely unlikely' that anyone will actually be injured." Schimmick Constr., 12 Wn. App. 2d at 788 (quoting Lee Cook Trucking & Logging v. Dep't of Lab. & Indus., 109 Wn. App. 471, 481, 36 P.3d 558 (2001)). Con Agra, does not align with Washington Law. "Resort to federal case law is neither necessary nor proper when controlling Washington precedent exists." Schimmick Constr., 12 Wn. App. 2d at 788 n.6. The Department was not required to demonstrate a "reasonable likelihood" of exposure to corrosive chemicals, but instead, the potential.

The Board similarly properly interpreted the phrase "major portions of an employee's body" to mean "part of a worker['s] body significant in size and degree."

The regulation does not define "major portions," thus, we may look to the dictionary for guidance. Wash. Cedar, 137 Wn. App. at 600-01. Merriam-Webster defines "major" as "greater in number, quantity, or extent," "notable or conspicuous in effect or scope," and "prominent or significant in size, amount, or degree." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/major (last visited Sept. 7, 2022). Merriam-Webster defines "portion" as "an individual's part or share of something" and "an often limited part of a whole." MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/portion (last visited Sept. 7, 2022). Amazon uses the same definitions but argues that portions, plural, suggests that "splashes must be of a volume large enough to cover extensive parts of an employee's body." Amazon is incorrect.

Amazon's interpretation limits the emergency shower requirement and improperly adds restrictive words to the regulation. This restrictive reading does not further the underlying policies of the standard or WISHA as a whole. Conversely, interpreting major portions to mean "part of a worker's body, significant in size and degree," is a reasonable interpretation accurately reflecting both definitions and furthers the goals of the standard and WISHA. It also reflects the court's duty to liberally interpret WISHA regulations.

We conclude that the Board properly interpreted both "potential" and "major portions" in the emergency shower regulation.

C.

Amazon also argues that the Department failed to prove with substantial evidence that hazardous chemicals had the potential to contact major portions of an employee's body.  We disagree.

The Board's findings are conclusive if supported by substantial evidence.  Mowat Constr. Co. v. Dep't of Lab. & Indus, 148 Wn. App. 920, 925, 201 P.3d 407 (2009)  We do not reweigh the evidence, even if it might have drawn different conclusions.  Ostrom Mushroom Farm v. Dep't of Lab. & Indus., 13 Wn. App. 2d. 262, 271-72, 463 P.3d 149 (2020).  The Board found that at the time of the Department's inspection, "there was a potential for major portions of an employee's body to contact corrosives, strong irritants, or toxic chemicals."  Thus, because the cited standard applied, the Department satisfied the first element of a serious WISHA violation.

Substantial evidence supports the Board's finding.  Employees at the warehouse processed thousands of pounds of corrosives in Amazon's cage each month.  The cage contained multiple 55-gallon drums filled with chemical waste, ultimately disposed of through Stericycle, a waste management company.  In the cage, multiple Amazon employees worked directly with hazardous substances throughout their entire shift, moving them into the drums and then moving the drums to the offloading area.  Up to four employees processed items into four open 55-gallon drums at the same time. Employees worked in the hazardous waste area over seven hours a day, manually moving leaking hazards into drums.  Powered industrial trucks operated near the hazardous waste area.  There were 48 events involving powered industrial trucks at the warehouse in 2017, including the knocking over of an empty drum with a pallet jack.

Sasakura testified that the greatest risk for contact occurred during the transfer of leaking hazardous chemicals into the drums. The bags containing hazardous substances are "repeatedly handled and processed from stock to accumulation area to gatekeeping area to hazardous waste storage area." Sasakura explained that with the repeated handling, it is not hard to imagine a scenario where the waste leaks from the bag or the bag is dropped and splashes on an employee. As the Board explained, "[c]ertainly, given the volume of waste processed at the Kent warehouse, there is the potential for that to happen." Looking to the evidence, we conclude that substantial evidence supports the Board's finding that hazardous substances have the potential to come into contact with major portions of an employee's body.

Affirmed.

_____
Mann, J.

WE CONCUR:

_____          _____
Birk, J.                              Dwyer, J.

-11-